CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Plaintiff
42 Ventures, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| 42 Ventures, LLC,<br><br>               Plaintiff,<br>vs.<br><br>Patrick Rend, et al.,<br><br>              Defendants. | **Case No.: 1:20-cv-228-DKW-WRP**<br>(Trademark)<br><br>MEMORANDUM IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR<br>DEFAULT JUDGMENT AGAINST<br>DEFENDANTS VINIT MAV, HE<br>SHAN, HOSAM AZZAM, AND<br>FAHD ALI |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANTS VINIT MAV, HE SHAN, HOSAM
AZZAM, AND FAHD ALI

1

**Table of Contents:**

Table of Authorities...................................................................................... 5

I.      Introduction ..................................................................................... 9

II.     Subject Matter Jurisdiction and Venue.......................................... 11

III.    Personal Jurisdiction ...................................................................... 12

        A.      The Court has Jurisdiction Pursuant to Fed. R. Civ. P. 4(k)(2), the so-called Federal Long-Arm Statute…………………………………………… 12

                1.      Plaintiff's Claims Against Defendant Arise under Federal Law………………...……………………………………………….. 12

                2.      Defendants are not Subject to the Personal Jurisdiction of Any State Court of General Jurisdiction…………………………………………… 12

                3.      Defendant has Sufficient Minimum Contacts with the US that the Maintenance of the Suit Does Not Offend Due Process………………………….. 13

                        a.      The Defendant Purposefully Directs His Activities toward the US……………………………………………………………….. 15

                                i.      Intentional Act…………………………………… 15

                                ii.     Expressly Aimed at the Forum………………… 16

                                iii.    Defendant Knew He was Causing Harm that was Likely to be Suffered in the US………………………………………… 18

b.      Plaintiff's Claims Arise out of or Relates to the Defendant's Forum-Related Activities……………….…………………….. 19

c.      The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice……………….…………………………………… 19

IV.     Defendants' Default Entered....................................................... 20

V.      Argument.................................................................... 20

    A.      Trademark Infringements Have Been Established ........................... 20

        1.      Plaintiff has Established Ownership of the Trademark……... 21

        2.      Defendants' Use of Plaintiff's Trademark Likely Causes Consumer Confusion…………………………………………….. 21

            i.      Strength of the Mark…………………………..……... 23

            ii.     Proximity of the Goods………………………………… 23

            iii.    Similarity of the Marks…………………..…………… 24

            iv.     Marketing Channels Used…………………………… 24

            v.      Defendants' Intent in Selecting the Mark……………... 25

    B.      Default Judgment is Appropriate ....................................... 25

        1.      The Possibility of Prejudice to Plaintiff……………..……... 26

        2. & 3.      The Merits of Plaintiff's Substantive Claims and the Sufficiency of the FAC……………….…………………………………... 27

        4.      The Sum of Money at Stake in the Action……………………… 27

5.      The Possibility of a Dispute Concerning the Material Facts… 27

6.      Whether the Default was Due to Excusable Neglect…………. 28

7.      The Policy Considerations………………………………… 29

VI.    Statutory Damages for Willful Trademark Infringement…......................... 29

VII.   Plaintiffs are Entitled to Injunctive Relief ..................................................... 33

VIII.  Conclusion..................................................................................................... 35

**Table of Authorities:**

***Statutes and Rules***

United States Lanham Act, 15 U.S.C. §§ 1051 et seq............................................... 9

15 U.S.C. § 1072……………………………………………………………… 25, 30

15 U.S.C. § 1115(a)………………………………………………………………… 21

15 U.S.C. § 1116(a)………………………………………………………………… 33

15 U.S.C. § 1116(d)(1)(B)(i)…………………………………………………...… 30

15 U.S.C. § 1117(c)(1)……………………………………………………………… 29

15 U.S.C. § 1117(c)(2)…………………………………………………………... 27, 29

15 U.S.C. § 1117(d)………………………………………………………………… 29

15 U.S.C. §1121……………………………………………………………...…... 11

28 U.S.C. § 1331................................................................................................... 11

28 U.S.C. § 1338................................................................................................... 11

28 U.S.C. §§ 1391(b) and (c)............................................................................... 12

28 U.S.C. § 1400(a) ............................................................................................. 12

Fed R. Civ. P. 4(f)(3)………………………………………………………...… 11

Fed. R. Civ. P. 4(k)(2) ................................................................................... 12, 14

Fed. R. Civ. P. 26 ................................................................................................. 31

Fed. R. Civ. P. 55(a) ............................................................................................ 28

Fed. R. Civ. P. 55(b)(2) ....................................................................................... 26

*Cases*

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)............... 22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)... 14

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017)................................................................. 13

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999)........................................................................................... 22

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)........................... 13

*Calder v. Jones*, 465 U.S. 783 (1984)................................................... 15

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)... 20

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015)........................................................................................... 33

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)..................................... 13

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017).......... 35

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998)...... 22

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)...................... 33

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986)............................ 26

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir.2002).......... 23

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018)........................................................................................... 15

*Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).......... 26

*Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007)............. 15

*Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007)……………………………………………………………………… 14, 17

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)…………………………………………………………….. 13

*K & N Eng'g, Inc. v. Bulat*, 259 F. App'x 994, 995 (9th Cir. 2007)…………….. 30

*Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 347 F. App'x 275, 276 (9th Cir. 2009)………………………………………………………………………... 31

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)………………………………………………………………………... 20

*Morrill v. Scott Financial Corporation*, 873 F.3d 1136, 1142 (9th Cir. 2017)…………………………………………………………………… 15, 16

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018)………………………………………………………………………... 20

*Parr v. Club Peggy, Inc.*, 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012)………………………………………………………………………... 26

*Pebble Beach Co. v. Caddy*, *453 F.3d 1151, 1159 (9th Cir. 2006)*……………… 12

*Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985)………… 29

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)………………………………………………………………………... 26

*Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)………………………………………………………………………... 31

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001)……………………………………………………………………… 28

*Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)… 22-25

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987)…… 25, 27

*Walden v. Fiore*, 571 U.S. 277, 284 (2014)………………………………. 13, 14, 16

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)…………………………………………………………………………... 15

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012)…………………………………………………………………………... 34

## I.   __INTRODUCTION__

Plaintiff 42 Ventures, LLC ("Plaintiff") is a limited liability company organized under the laws of Hawaii. *See* First Amended Complaint ("FAC") [Doc. #8] at ¶22.  Plaintiff owns trademark registration, "YTS," Reg. No. 6,025,651, which issued on Mar. 31, 2020 on the principal register of the United States Patent and Trademark Office. *See* Exhibit "1" [Doc. #8-1] to the FAC.   The trademark registration is for the standard character mark "YTS" and covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos and audio.  *Id*.  The registration is valid and subsisting and has never been cancelled.  *See* FAC at ¶32.  Plaintiff has used the YTS trademark continuously in US commerce since at least January 27, 2020 in connection with distribution of licensed content via, for example, a website.  *See* Id. at ¶¶23, 51.

Plaintiff filed the FAC against Defendants Patrick Rend, Patrick Petrov, Vinit Mav, He Shan, Hosam Azzam, and Fahd Ali on May 29, 2020 alleging trademark infringement and unfair competition, in violation of the US Lanham Act, 15 U.S.C. 1051 §§ et., for adopting and using identical and/or substantially indistinguishable marks from Plaintiff's registered YTS mark for use in interstate commerce in connection with the distribution and/or streaming of unlicensed copyright protected content after Plaintiff first adopted the trademark. *See* FAC at ¶¶36, 61. On June 10,

2020, a stipulated consent judgment between Plaintiff and Defendants Rend and Petrov was entered by this Court. *See* [Doc. #14].

Defendant Vinit Mav ("Vinit") operated the website YTS.MS that included the YTS mark as a spurious designation that is identical with, or substantially indistinguishable from Plaintiff's registered trademark. *See* FAC at ¶¶38, 45. Despite Plaintiff's counsel reaching out to Defendant Vinit multiple times before filing the FAC, Defendant Vinit only reluctantly agreed to shut down his website on May 23, 2020 after Plaintiff's counsel informed him of the original Complaint. *See* Decl. of Counsel at ¶¶3-5.

Defendant He Shan ("Shan") operates the websites YST.LT, YTS.TL, ytsag.me, yts.ae, ytsmovies.cc and yts-ag.com. *See* FAC at ¶39. Each of the websites include the YTS mark as a spurious designation that is identical with, or substantially indistinguishable from Plaintiff's registered YTS trademark. *See Id.* at ¶¶39, 46-47. Plaintiff's counsel has sent numerous communications to Defendant Shan requesting him to cease using the YTS mark. *See* Decl. of Counsel at ¶6.  Nonetheless, Defendant Shan continues to operate at least the website YST.LT where he displays the mark in flagrant violation of Plaintiff's rights. *See Id*. at ¶7.

Defendant Hosam Azzam ("Azzam") distributed and promoted the infringing software applications ("app") "Y Movies - YTS Movies Library" and "YTS movies" from at least the Google play store. *See* FAC at ¶¶40, 48.  Plaintiff's counsel

contacted Defendant Azzam on May 23, 2020 to request that he cease using Plaintiff's mark in connection with his apps. *See* Decl. of Counsel at ¶8.  Defendant Azzam ignored this request and continued to promote the apps using Plaintiff's mark until Plaintiff's counsel sent him a copy of the FAC and a waiver of service request via email on June 2, 2020.  *See Id*. at ¶¶8-10.

Defendant Fahd Ali ("Ali") promoted and distributed the app "Movie Downloader 2020 | YTS Movies" from at least the Google play store. *See* FAC at ¶¶41, 48.  Plaintiff's counsel contacted Defendant Ali on May 29, 2020 to request that he cease using Plaintiff's mark in connection with his app. *See* Decl. of Counsel at ¶13.  Defendant Ali changed the infringing title of his app but has continued to use the YTS mark in the description of his app in the Google Play store.  *See Id*. at ¶18-19.

Defendants were served on June 18 and 19, 2020. *See* [Doc. #20] at ¶¶3-6.  Service was performed pursuant to Fed R. Civ. P. 4(f)(3) and this Court's Order [Doc. #13] of June 18, 2020.  The Clerk of the Court entered default judgment on all claims plead in the FAC against Defendants on July 14, 2020 [Doc. #23].

## II.   <u>SUBJECT MATTER JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338, since this matter involves

substantial claims arising under the Federal Lanham Act. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## III.   PERSONAL JURISDICTION

### A.  The Court has Jurisdiction Pursuant to Fed. R. Civ. P. 4(k)(2), the So-Called Federal Long-Arm Statute

#### 1.  Plaintiff's Claims Against Defendants Arise under Federal Law.

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). Plaintiff's claims for Trademark Infringement and Unfair Competition under the Lanham Act arise out of Federal law.

#### 2.   Defendants are not Subject to the Personal Jurisdiction of Any State Court of General Jurisdiction.

Defendant Vinit and Defendant Ali are residents of India, Defendant Shan is a resident of China, and Defendant Azzam is a resident of Egypt. *See* FAC at ¶¶26-

29. Thus, Defendants are not subject to the personal jurisdiction of any state court of general jurisdiction.

3. Defendants have Sufficient Minimum Contacts with the US that the Maintenance of the Suit Does Not Offend Due Process.

Due process requires that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotations omitted). A court has specific jurisdiction over a nonresident defendant when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017) (alteration in original).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.*  Plaintiff does not assert general jurisdiction. The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a

State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. This requires the relationship to "arise out of contacts that the 'defendant *himself* creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284-85.

To analyze specific jurisdiction, the 9th Circuit has articulated a three-part test to evaluate the sufficiency of a defendant's minimum contacts with the forum:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotations omitted).

In *Holland America Line v. Wärtsilä North Amer.*, the 9th Circuit concluded that the "due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] … and the forum state, we consider contacts with the nation as a whole." *Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007). Accordingly, Plaintiff will address the three-part test of *Axiom Foods, Inc.* with respect to the US as the forum.

*a. The Defendants Purposefully Directs Their Activities Toward the US.*

A purposeful direction analysis is appropriate because a claim for trademark infringement sounds in tort. *See Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007) ("A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate."). The purposeful direction analysis has been equated with the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984). *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp*., 905 F.3d 597, 605 (9th Cir. 2018). "Under the *Calder* effects test, purposeful direction exists when a defendant allegedly: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state*." Id.* at 604 n.3 (citation and internal quotation marks omitted).

i.    Intentional Act

"An intentional act is one 'denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended.'" *Morrill v. Scott Financial Corporation,* 873 F.3d 1136, 1142 (9th Cir. 2017) (some alterations in *Morrill*) (quoting *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)).

Defendants intentionally utilize numerous US companies such as using US (California) email provider Google's Gmail service, operating their websites and apps via the US (California) nameserver company Cloudflare, Inc. and US

(California) Google Play store, and advertising through US social media platforms Facebook and Twitter (both in California). *See* FAC at ¶¶7-8, 10. Specifically, Defendant Vinit uses the US (Washington) web host provider Amazon Web Services, US (California) nameserver Cloudflare and US (California) payment provider Visa to pay for hosting and nameserver services. *Id*. at ¶17. Defendant Shan uses the US (California) nameserver Cloudflare, US (California) domain registrar Dynadot, LLC and the US payment provider Visa. *Id.* at ¶18. Defendants Azzam and Ali both promote and distribute their infringing software applications from the Google Play store run by the US (California) company Google. *Id.* at ¶19. Defendant Azzam uses the US (Arizona) domain registrar Namecheap for his personal website. *Id.* at ¶20. Thus, because Defendants intentionally placed the infringing marks on websites or app stores hosted by US companies, Defendants intentionally utilized the infringing marks in the US via Google, Cloudflare, Namecheap, and Amazon Web Services.

     ii.     Expressly Aimed at the Forum

The two factors that Courts have considered when determining whether an action is expressly aimed at the forum are: (1) whether the relationship arises out of contacts that the defendant himself creates with the forum State; (2) whether defendant contacts with the forum State rather than with persons who reside there. *See Morrill,* 873 F.3d at 1143 (quoting *Walden*, 134 S. Ct. 1115, 1122 (2014)).

Defendants agreed to the terms of services and jurisdiction of laws of the US in connection with their infringing activities. *See* FAC at ¶¶8, 17-20. When Defendants Vinit and Shan registered for service with Cloudflare, they agreed to jurisdiction and laws of California. *See* Decl. of Counsel at ¶21.  When Defendants Azzam agreed to register his domain with Namecheap, he agreed to be bound by the jurisdiction and laws of Arizona. *See Id*. at ¶22. When Defendant Vinit agreed to the terms of service of Amazon Web Services for hosting his website YTS.MS, he agreed to the jurisdiction and laws of the state of Washington. *See Id*. at ¶23. When Defendant Shan agreed to the terms of service for Dynadot, he agreed to the jurisdiction and laws of California. *See Id*. at ¶24.  Finally, when Defendants Azzam and Ali agreed to the terms of service for the Google Play store, they agreed to be bound by the jurisdiction and laws of California. *See Id*. at ¶25.

Furthermore, Defendants Vinit and Shan took advantage of provisions of US law on their websites – namely the safe harbor protections of the Digital Millennium Copyright Act ("DMCA"). *See* FAC at ¶9.

Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound.  *See Holland Am. Line Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted). Although these agreements provided for Courts in Arizona, Washington and California, the focus of the Federal Long Arm statute test is the US

as the forum. Moreover, these contacts are not the type of continuous contacts such as a place of incorporation and principal place of business that would constitute general jurisdiction with one of these states, thereby ruling out the applicability of the Federal Long Arm statute.

As alleged in the FAC, Defendants Vinit and Shan purposely direct their electronic activity into the US to target and attract a substantial number of users in the US based upon personal information, such as web browsing history. *See* FAC at ¶12. Defendants Vinit and Shan collect log files, including Internet Protocol ("IP") address, Internet Service Provider ("ISP"), and browser type of each user who visits their websites, and utilize cookies and web beacons to store information of users. *Id.* at ¶13. Defendants Vinit and Shan then use these cookies, log files, and/or web beacons to tailor advertisements expressly aimed at US users and gain financial benefits from such advertisements. *See Id.* at ¶¶14-15. Particularly, users in Hawaii receive advertisements based on their location and websites previously visited. *Id.*

Defendants Azzam and Ali purposefully direct their electronic activity into the US through the Google Play store, financially benefiting from advertisements aimed at US users and the US consumer base. *See* FAC ¶14; Decl. of Counsel ¶16.

iii.    Defendants Knew they were Causing Harm Likely to be Suffered in the US.

Defendants *knew* they were causing harm in the US when operating their infringing websites and/or apps. As stated above, Defendants registered and hosted websites and apps in the US by US companies. Defendants Vinit's and Shan's websites promote movies produced by US companies, with a download link for users to reproduce each movie in violation of US copyright law, all under the infringed YTS mark. *See* FAC at ¶¶9, 11.

Thus, Defendants knew they were causing harm not only to the US companies that produced these movies, but also Plaintiff's trademark. Furthermore, Plaintiff's Counsel communicated directly with Defendants and informed them of the harm they were causing in the US. *See* Decl. of Counsel [Doc. #13-2] at ¶¶2-13.

*b. Plaintiff's Claims Arise out of or Relates to the Defendants' Forum-Related Activities.*

Plaintiff's claims arise from Defendants' websites or apps registered with US companies (Namecheap, Cloudflare, Dynadot), promoted via US social media platforms (Twitter and Facebook), hosted via the US companies (Cloudflare and Amazon Web Services), promoted on US app store Google Play, and paid from a US company (Visa) account. *See* FAC at ¶¶7-10, 16-20; Decl. of Counsel at ¶¶3, 9, 11, 14.

*c. The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice.*

It is not Plaintiff's burden to address this prong. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). However, Plaintiff respectfully submits that since Defendants have already consented to be haled into US courts in California, Washington, and Arizona, there is no further burden for Defendants to be haled into a Court in Hawaii.

## IV.   DEFENDANTS' DEFAULT ENTERED

Defendants were served via authorized alternate means per this Court's order [Doc. #15].  When Defendants failed to appear, plead, or otherwise defend, Plaintiff filed request for the entry of default on July 12, 2020 [Doc. # 22] which was granted by the Court [Doc. #23].

## V.   ARGUMENT

### A.   Trademark Infringements Have Been Established

A plaintiff asserting a trademark infringement claim must demonstrate: 1) it has a valid, protectable mark, and 2) the defendant's use of the mark is likely to cause consumer confusion. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). The "ultimate test" for unfair competition is exactly the same as for trademark infringement: "whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (citations omitted).

1.  Plaintiff has Established Ownership of the Trademark.

In the FAC, Plaintiff alleged that it owns the trademark for the mark "YTS" and included the Trademark Reg. No. 6,025,651, which issued on Mar. 31, 2020 by the United States Patent and Trademark Office. *See* Exhibit "1" [Doc. #8-1] of the FAC. Registration is "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark…." 15 U.S.C. § 1115(a).

2.  Defendants' Use of Plaintiff's Trademark Likely Causes Consumer Confusion.

As alleged in the FAC, Defendants adopted and used identical and/or confusingly similar YTS marks on their own websites and/or apps to distribute and/or stream unlicensed copyright protected content after Plaintiff first adopted the trademark. *See* FAC at ¶36. Indeed, Defendant Vinit operated the website YTS.MS, with the YTS mark prominently displayed on the webpage. *See Id*. at ¶¶38, 45. Defendant Shan operates many websites with the YTS mark, including YST.LT, YTS.TL, ytsag.me, yts.ae, ytsmovies.cc and yts-ag.com, with the YTS mark prominently displayed. *See Id.* at ¶¶39, 46. Defendant Azzam promoted and distributed the apps "Y Movies – YTS Movies Library" and "YTS movies" from at least the Google Play store, both utilizing the YTS mark in the graphical user interface. *See Id.* at ¶¶40, 48.  Similarly, Defendant Ali promoted and distributed the

app "Movie Downloader 2020 | YTS Movies" from at least the Google Play store, also with the YTS mark. *See Id.* at ¶¶41, 48. Thus, Defendants intentionally utilize Plaintiff's mark to mislead the public about the origins of their goods and services, damaging both the Plaintiff and public itself. Moreover, Defendants widely advertise their goods and services with Plaintiff's YTS mark in order to trade on Plaintiff's reputation and goodwill.

In determining whether confusion between related goods is likely, the following eight factors in *AMF Inc. v. Sleekcraft Boats* are controlling:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The *Sleekcraft* test is a "fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005); *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) (allowing case to proceed past summary judgment where the plaintiff overwhelmingly satisfied three *Sleekcraft* factors), *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (finding three *Sleekcraft* factors to be the most important). Thus, Plaintiff focuses on five of the eight factors that are overwhelmingly in favor of Plaintiffs.

i.    Strength of the Mark

The strength of the Plaintiff's mark determines the "scope of trademark protection to which the mark is entitled. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir.2002). Indeed, the more unique and distinctive the mark, the greater the degree of protection. *Id*. Trademarks are divided into five categories, with "arbitrary" and "fanciful" marks being the two strongest. *Id*. "Fanciful" marks consist of "coined phrases" without commonly known connection with the product at hand. *Id*. Examples of fanciful marks include "Kodak" cameras or "Aveda" skin care products. *Surfvivor Media*, 406 F.3d 625, 632 (9th Cir. 2005).

Plaintiff's YTS mark is a fanciful mark, as it contains no commonly known connection with Plaintiff's products of distributing licensed content to the public. *See* FAC ¶23. Thus, Plaintiff's unique and distinctive mark affords the highest degree of trademark protection.

ii.    Proximity of the Goods

To determine whether the parties' goods or services are proximate, the Court looks to whether "customers are 'likely to associate' the two product lines…[and] whether the buying public could reasonably conclude that the products came from the same source." *Surfvivor Media* at 633 (citations omitted).

In this case, Defendants' goods and services are intentionally and willfully extremely similar and/or identical to those of Plaintiff's. Indeed, Defendants seek to

23

take advantage of Plaintiff's goodwill and reputation by promoting similar media content, but whereas Plaintiff properly distributes licensed goods, Defendants illegally promote rampant piracy of copyright protected films. *See* FAC ¶¶ 23, 36, 42.

### iii. Similarity of the Marks

In determining the similarity of parties' marks, the Court considers each mark within the "context of other identifying features," such as "sight, sound, and meaning." *Surfvivor Media* at 633 (citations omitted).

Here, any further analysis is unnecessary as Defendants utilize Plaintiff's marks exactly, in both website domains and on the Google Play store, as well as images of the mark on Defendants' websites or apps. *See* FAC ¶¶38-41, 45-48.

### iv. Marketing Channels Used

To determine the overlap of marketing channels used, the Courts look to "whether the parties distribute their goods in the same marketing channels." *Surfvivor Media* at 633 (citations omitted).

In the instant case, Defendants intentionally and willfully utilize the same marketing channels that Plaintiff utilizes to promote Defendants' unlicensed content, despite the fact that Plaintiff has distributed licensed content in the US under its YTS mark since Jan. 27, 2020. *See* FAC ¶¶42, 51.

v.      Defendants' Intent in Selecting the Mark

While malicious intent is not necessary to prove trademark infringement, when the alleged infringer "adopted his mark with knowledge, actual or constructive, that it was another's trademark, resolution of this factor favors [plaintiffs]." *Surfvivor Media* at 634 (citations omitted).

In this case, resolution of this factor overwhelmingly favors the Plaintiff. Defendants engaged in infringing activity despite having constructive notice of Plaintiff's trademark registration rights under 15 U.S.C. § 1072, and actual knowledge of Plaintiff's use of its YTS mark. FAC at ¶53. Indeed, even after Defendants were contacted concerning their infringing activities, Defendants failed to comply to demands, and continued to utilize and infringe Plaintiff's rightful marks. *Id.* at ¶54. Accordingly, Defendants' infringing actions prove a strong likelihood of consumer confusion regarding the parties' goods and services, and result in a resolution of the *Sleekcraft* factors for Plaintiff. As such, Plaintiff respectfully asks the Court to find Defendants committed trademark infringement.

**B.      Default Judgment is Appropriate**

Because Defendants have chosen to default instead of defending, they have admitted the truth of the allegations asserted in the complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the

amount of damages, will be taken as true.").  While the court may conduct a hearing

to determine damages, *See* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence

submitted by Plaintiff.  *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38,

40 (2d Cir. 1989).

Plaintiff now respectfully requests that this Court enter a default judgment

against Defendants. When evaluating whether to grant a judgment by default, courts

consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money
> at stake in the action, (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring decisions on the
> merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club*

*Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012). All of these

factors support the conclusion that Plaintiffs are entitled to a default judgment.

1.   The Possibility of Prejudice to Plaintiff

Plaintiff would certainly be prejudiced if the Court declines to enter default

judgment, for it would leave Plaintiff without any remedy against Defendants, who

have failed to even show up and contest this dispute. "If Plaintiff['s] motion for

default judgment is not granted, Plaintiff[] will likely be without other recourse for

recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

Cal. 2002).  Despite the fact that Defendants don't deny that Plaintiff is entitled to

an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against them, Plaintiff would be left unable to seek damages or even to prevent Defendants from brazenly continuing to infringe Plaintiff's trademark by promoting and distributing unlicensed content on their websites and on the Google Play website. Indeed, a refusal would entirely frustrate both the Lanham Act and the civil justice system.

## 2. & 3. The Merits of Plaintiff's Substantive Claims and the Sufficiency of the FAC

As discussed above, Plaintiff has adequately pled its claims for trademark infringement and unfair competition under the Lanham Act. *See* FAC at ¶¶50-64.

## 4.   The Sum of Money at Stake in the Action

Plaintiff is seeking an award of statutory damages of $250,000 against each of Defendants for willful infringements of Plaintiff's YTS mark, pursuant to 15 U.S.C. § 1117(c)(2). The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

## 5.   The Possibility of a Dispute Concerning the Material Facts

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendants' default, this Court must take the factual allegations asserted in the FAC as true. *See TeleVideo Sys.*, 826 F.2d at 917–18.  Moreover, Defendants have not made any attempt to contest those allegations (or for that matter, even

27

bothered to appear).  Finally, Defendants have admitted to being the operator of the respective websites and/or apps.  *See* Decl. of Counsel at ¶¶4, 11, 13.

    6.   Whether the Default was Due to Excusable Neglect

Defendants' default is not the result of excusable neglect. As discussed above, Defendants were served a copy of the FAC via Court authorized alternate means between June 18, 2020 and June 19, 2020. *See* Decl. of Counsel [Doc. #20] at ¶¶3-6.  Plaintiff's counsel sent a copy of the Rule 55(a) Request for Clerk to Enter Default [Doc. #22] to all Defendants.  *See* Certificate of Service [Doc. #22-3].  Plaintiff's counsel also sent a copy of the Entry of Default [Doc. #23] to the Defendants.  *See* Decl. of Counsel at ¶¶5, 6, 12, 14.  Furthermore, through email communications with Plaintiff's Counsel, Defendants Vinit and Ali have admitted to being the operator of the respective website and app, as well as participating in discussions regarding settlement options. *See* Decl. of Counsel [Doc. #13-2] at ¶¶8, 13, 15. Thus, Defendants have been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendants' decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7.   The Policy Considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendants' failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole and has no mechanism to prevent further infringements of its trademark by these Defendants. In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendants.

## VI.   STATUTORY DAMAGES FOR WILLFUL TRADEMARK INFRINGEMENT

Plaintiff voluntarily withdraws its claim against Defendants Vinit and Shan for statutory damages of $100,000 pursuant to 15 U.S.C. § 1117(d) for registering their domain names with bad faith intent to profit from Plaintiff's registered trademark.  *See* FAC at ¶(F).

15 U.S.C. § 1117(c)(1) allows statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just".  15 U.S.C. § 1117(c)(2) allows for statutory damages of not more than $2,000,000 for willful use of a counterfeit

mark. A counterfeit mark is defined as a "counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i).

Plaintiff elects to receive statutory damages of $250,000 against each of Defendants. Undoubtedly, Defendants' conduct is willful. Despite having constructive notice of Plaintiff's Federal registration of its mark under 15 U.S.C. § 1072, as well as actual knowledge of Plaintiff's use of its YTS mark, Defendants continued to advertise and distribute their goods and services using Plaintiff's YTS mark. *See* FAC at ¶¶53-56. Furthermore, Defendants purposefully utilize Plaintiff's YTS mark in their domain registrations and app names in order to mislead consumers about the origins of its goods and services as connected to Plaintiff, resulting in a substantial loss of income, profits, and goodwill. *See Id.* at ¶¶38-39, 61-63. Additionally, Defendants used Plaintiff's mark in connection with distribution of unlicensed copyright protected films, leading to rampant copyright infringement, further causing undue damage to Plaintiff's mark and brand. *See* FAC at ¶¶ 23, 36, 42.

District Courts have broad discretion in determining statutory damages. *K & N Eng'g, Inc. v. Bulat*, 259 F. App'x 994, 995 (9th Cir. 2007). Still, some of the

factors courts have considered include the infringer's "willingness in offering for sale the counterfeit goods…[and] ongoing failure to comply with discovery requests, which made proof of actual damages difficult or impossible." *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 347 F. App'x 275, 276 (9th Cir. 2009) (affirming district court's default judgment of $1,000,000 against infringing party).

In *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, the Central District of California awarded a default judgment of $2,000,000 in statutory damages against defendant given defendant's willful infringing of counterfeit goods, the "likelihood that its conduct would cause confusion or mistake or otherwise deceive customers," and defendant's "failure to comply with the judicial process or to participate in any way in the present litigation." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Plaintiff requests a similar award in this case because Defendants have willfully infringed on Plaintiff's mark and failed to participate in the judicial process in any way. Particularly, because Plaintiff could not have the Rule 26 conference due to Defendants' default, Plaintiff was unable to conduct discovery to determine the profits Defendants obtained from their infringing apps and websites despite the millions of visitors to their websites. *See* Decl. of Counsel at ¶¶27-28.

Defendant Vinit steadfastly continued his infringing conduct despite multiple prior notices from Plaintiff's counsel and his host provider AWS.  *See Id. at* ¶¶1-5.

Defendant Vinit only finally took down his infringing website after Plaintiff's counsel sent him a copy of the entry of default, but then sold the domain YTS.MS rather than voluntarily transferring it to Plaintiff. *See Id*. at ¶26. Accordingly, Plaintiff may be forced to begin further legal process against the purchaser of the YTS.MS domain.

Defendant Azzam ignored Plaintiff's counsel's notice about the infringing nature of his app and only took it down after Plaintiff's counsel sent him a copy of the FAC. *See* Decl. of Counsel at ¶¶8-11. Per Defendant Azzam's CV [Doc. #13-7], he is a software developer with nearly four years of experience including with the major Middle Eastern software company INTDV. *See* https://www.softbankrobotics.com/emea/en/partner/intdv. With such experience, Defendant Azzam should know better about the consequences of his actions.

Although Defendant Ali changed the title of his infringing app in the Google Play store after Plaintiff's counsel sent him a cease and desist message, he has continued to use Plaintiff's mark in the description of his app. *See* Decl. of Counsel at ¶¶13, 18-19. He has been untruthful with his communications with Plaintiff's counsel. Particularly, he stated that he had removed the app and had no other apps on other platforms; however, Plaintiff's counsel determined that he had merely changed the name of his app and was continuing to distribute it from the Google Play store. *See Id*.

## VII.  PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

Plaintiff requests that the Court grant its request for injunctive relief, permanently barring Defendants from infringing Plaintiff's YTS trademark and ordering any service provider provided with notice of the injunction in privity with Defendants such as Cloudflare, Google, Dynadot cease providing service for and facilitating access to Defendants' websites and software apps through which Defendants engage in infringements of Plaintiff's registered trademark. The Court is authorized to grant permanent injunctive relief to prevent or restrain trademark infringement.  *See* 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions…to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.").

A Plaintiff is required to satisfy the following four-factor test to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.,*

33

547 U.S. 388, 391 (2006); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015). In *Wecosign, Inc. v. IFG Holdings, Inc.*, the Central District of California granted an injunction against trademark infringing defendants since plaintiff had:

> "demonstrated actual success on the merits of its trademark infringement and cyberpiracy claims. If an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services. Furthermore, the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe De1fendants' infringing activities. Finally, an injunction is in the public interest because the public has an interest in avoiding confusion between two companies' products."

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).

Despite Defendants defaulting, Plaintiff has demonstrated actual success on the merits of its YTS mark being infringed by Defendants. Further, Plaintiff has shown it would suffer irreparable injury from the ongoing damages to its goodwill and reputation, while Defendants would not face any hardships.

Moreover, Defendants are likely to continue infringing Plaintiff's mark, underscoring the need for permanent injunctive relief. Defendant Shan continues to infringe the mark on his multiple websites. *See* Decl. of Counsel at ¶7. Defendant Ali merely removed the "YTS" mark from the title of his app, but continues to include the mark in the description portion of the same app. *See Id*. at ¶¶18-19. Defendant Vinit only took down the website after notification of the lawsuit despite

multiple pre-litigation demands. *See Id*. at ¶¶4-5. Defendant Azzam only took down his app after notification of the lawsuit despite multiple a pre-litigation demand. *See Id*. at ¶¶8-11.

Finally, Plaintiff believes an injunction is in the public interest since Plaintiff has previously demonstrated the likelihood of confusion between Plaintiff and Defendant goods and services. Unless this Court grants an injunction, Defendants will likely continue to infringe on Plaintiff's mark, further damaging Plaintiff's goodwill and reputation. Granting an injunction is the only way to prevent further infringement.

Defendant Shan's website and Defendant Ali's app promotes rampant copyright infringement of motion pictures. *See* FAC ¶¶ 23, 36, 42. Although the owners of these motion pictures are not Plaintiff's in the present action, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (quotations and citations omitted).

Enjoining the Defendants' illegal conduct plainly furthers the public interest.

## VIII. <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court enter default judgment against Defendants for an award of the requested statutory damages of $250,000 against

each of Defendants and permanently enjoin the Defendants from infringing Plaintiff's registered mark as requested.

DATED: Kailua-Kona, Hawaii, August 12, 2020.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff