CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:        kculpepper@culpepperip.com

Attorney for Plaintiff
42 Ventures, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| 42 Ventures, LLC, | ) | **Case No.: 1:20-cv-228-DKW-WRP** |
| | ) | (Trademark) |
| Plaintiff, | ) | |
| vs. | ) | PLAINTIFF'S MEMORANDUM IN |
| | ) | SUPPORT OF PLAINTIFF'S |
| Patrick Rend, et al., | ) | OBJECTION TO THE FINDINGS |
| | ) | AND RECOMMENDATIONS |
| Defendants. | ) | |
| | ) | |
| | ) | |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION
<u>TO THE FINDINGS AND RECOMMENDATIONS</u>

**Table of Contents:**

Table of Authorities...................................................................................... 4

I.     Introduction......................................................................................... 7

II.    Legal Standard…………………….......................................... 10

III.   Argument…………........................................................ 11

     A.    Plaintiff Objects to the Recommendation's Conclusion that the Court Does Not Have Personal Jurisdiction Over Defendants Pursuant to Fed. R. Civ. P. 4(k)(2), the So-Called Federal Long-Arm Statute.………………………….. 11

          1.    The Defendants Purposefully Direct their Activities Toward the US.…………………...……………………………………………………... 14

              a.    Intentional Act………………………………………... 14

              b.    Expressly Aimed at the US…………………………… 16

              c.    Defendants Knew they were Causing Harm that was Likely to be Suffered in the US……………...……………………………….. 24

          2.    Plaintiff's Claims Arise out of or Relates to the Defendants' Forum-Related Activities…………………………………………………… 25

          3.    The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice…………………………………………………………... 25

     B.    Plaintiff Objects to the Recommendation's Conclusion that the Court Should *sua sponte* Dismiss this Action…………………………………………… 26

IV.   Conclusion...................................................................................................... 27

**Table of Authorities:**

*Statutes and Rules*

15 U.S.C. 1051 §§ et seq………………………………………………………... 7

17 U.S.C. § 512(c)……………………………………………………….. 16-17

28 U.S.C. § 636(b)(1)……………………………………………………….. 10

28 U.S.C. § 1404(a)…………………………………………………………. 26

Fed. R. Civ. P. 4(f)(3)............................................................................... 10

Fed. R. Civ. P. 4(k)(2)........................................................... 11, 13, 21-22

Fed. R. Civ. P. 55(b)(2)…………………………………………………... 10

*Cases*

*AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201, 1205 (9th Cir. 2020)...................................................................................................... 24

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)…………………………………………………………………... 13

*Bibiyan v. Marjan Television Network, Ltd*., No. CV181866DMGMRWX, 2019 WL 422664, at *4 (C.D. Cal. 2019)…………………………………………........ 20

*Bodyguard Prods., Inc. v. Musante*, 2020 WL 403720, at *2 (D. Haw. Jan. 24, 2020)…………………………………………………………………….. 20-22

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017)…………………………………………….. 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)…………………. 12-13

*Calder v. Jones,* 465 U.S. 783 (1984)…………………………………………….. 14

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)………………………………. 12

*DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 875 (N.D. Cal. 2012)……... 20

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018)……………………………………………………………………………... 14

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)…………… 10-11

*Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2015 WL 5043296, at *11 (N.D. Cal. Aug. 26, 2015)…………………………………………………………… 21

*Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007)……….......... 14

*Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir. 2007)…………………………………………………………………………… 13, 18

*Hungerstation LLC v. Fact Choice LLC*, 2020 WL 137160 (N.D. Cal. 2020)…………………………………………………………………………….. 19-20

*Hunter Killer Productions, Inc. et al. v. Quazi Zarlish, et al.*, 1:19-cv-00168-LEK-KJM, Doc. #53 (D. Haw. 2020)…………………………………………………… 22

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)………………………………………………………………... 12

*Lang Van, Inc. v. VNG Corp*, 2019 WL 8107873 (C.D. Cal. 2019) …………. 18-19

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)…………………………………………………………………………... 25

*Morrill v. Scott Financial Corporation,* 873 F.3d 1136, 1142 (9th Cir. 2017)........................................................................................................... 14, 16

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)……………….. 11

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)……….. 10

*United States v. Raddatz*, 447 U.S. 667, 673 (1980)……………………………… 10

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc)…... 10

*Walden v. Fiore*, 571 U.S. 277, 284 (2014)…………………………………... 12, 16

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)………………………………………………………………………... 14

## I.   **INTRODUCTION**

Plaintiff 42 Ventures, LLC ("Plaintiff") is a limited liability company organized under the laws of Hawaii. *See* First Amended Complaint ("FAC") [Doc. #8] at ¶22.  Plaintiff owns trademark registration, "YTS," Reg. No. 6,025,651, which issued on Mar. 31, 2020 on the principal register of the United States Patent and Trademark Office. *See* Exhibit "1" [Doc. #8-1] to the FAC.  The trademark registration is for the standard character mark "YTS" and covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos and audio.  *Id*.  The registration is valid and subsisting and has never been cancelled.  *See* FAC at ¶32.  Plaintiff has used the YTS trademark continuously in US commerce since at least January 27, 2020 in connection with distribution of licensed content via, for example, a website.  *See Id*. at ¶¶23, 51.

Plaintiff filed the FAC against Defendants Patrick Rend, Patrick Petrov, Vinit Mav, He Shan, Hosam Azzam, and Fahd Ali on May 29, 2020 alleging trademark infringement and unfair competition, in violation of the US Lanham Act, 15 U.S.C. 1051 §§ et seq., for adopting and using identical and/or substantially indistinguishable marks from Plaintiff's registered YTS mark for use in interstate commerce in connection with their pirating of copyright protected motion pictures after Plaintiff first adopted the trademark. *See* FAC at ¶¶36, 61. On June 10, 2020, a

stipulated consent judgment between Plaintiff and Defendants Rend and Petrov was entered by this Court. *See* [Doc. #14].

Defendant Vinit Mav ("Vinit") operated the website YTS.MS for the massive piracy of overwhelmingly if not exclusively United States ("US") motion pictures that included the YTS mark as a spurious designation that is identical with, or substantially indistinguishable from Plaintiff's registered trademark. *See* FAC at ¶¶8, 11, 38, 45.  Despite Plaintiff's counsel reaching out to Defendant Vinit multiple times before filing the FAC, Defendant Vinit only reluctantly agreed to shut down his website on May 23, 2020 after Plaintiff's counsel informed him of the original Complaint.  *See* Decl. of Counsel [Doc. #25-2] at ¶¶3-5.

Defendant He Shan ("Shan") operates the websites YST.LT, YTS.TL, ytsag.me, yts.ae, ytsmovies.cc and yts-ag.com for the massive piracy of overwhelmingly if not exclusively US motion pictures. *See* FAC at ¶8, 11, 39. Each of the websites include the YTS mark as a spurious designation that is identical with, or substantially indistinguishable from Plaintiff's registered YTS trademark. *See Id.* at ¶¶39, 46-47.  Plaintiff's counsel has sent numerous communications to Defendant Shan requesting him to cease using the YTS mark. *See* Decl. of Counsel [Doc. #25-2] at ¶6.  Nonetheless, Defendant Shan continues to operate at least the website YST.LT where he displays the mark in flagrant violation of Plaintiff's rights. *See Id.* at ¶7.

Defendant Hosam Azzam ("Azzam") distributed and promoted the infringing software applications ("app") "Y Movies - YTS Movies Library" and "YTS movies" for the massive piracy of overwhelmingly if not exclusively US motion pictures from at least the Google play store. *See* FAC at ¶¶8, 11, 40, 48, Second Declaration of Counsel at ¶¶5-8. Plaintiff's counsel contacted Defendant Azzam on May 23, 2020 to request that he cease using Plaintiff's mark in connection with his apps. *See* Decl. of Counsel [Doc. #25-2] at ¶8.  Defendant Azzam ignored this request and continued to promote the apps using Plaintiff's mark until Plaintiff's counsel sent him a copy of the FAC and a waiver of service request via email on June 2, 2020.  *See Id*. at ¶¶8-10.  However, Defendant Azzam continues to promote the apps on different US websites.  *See* Second Declaration of Counsel at ¶5.

Defendant Fahd Ali ("Ali") promoted and distributed the app "Movie Downloader 2020 | YTS Movies" for the massive piracy of overwhelmingly if not exclusively US motion pictures from at least the Google play store. *See* FAC at ¶¶8, 11, 41, 48.  Plaintiff's counsel contacted Defendant Ali on May 29, 2020 to request that he cease using Plaintiff's mark in connection with his app. *See* Decl. of Counsel [Doc. #25-2] at ¶13.  Defendant Ali changed the infringing title of his app but has continued to use the YTS mark in the description of his app in the Google Play store for pirating US motion pictures.  *See Id*. at ¶18-19.

Defendants were served on June 18 and 19, 2020. *See* [Doc. #20] at ¶¶3-6. Service was performed pursuant to Fed R. Civ. P. 4(f)(3) and this Court's Order [Doc. #13] of June 18, 2020.  The Clerk of the Court entered default judgment on all claims plead in the FAC against Defendants on July 14, 2020 [Doc. #23].  Plaintiff filed the present Rule 55(b)(2) Motion for Default Judgment [Doc. #25] ("Motion") on August 12, 2020. On October 2, 2020, Magistrate Judge Wes Porter issued the Findings and Recommendation ("Recommendation") [Doc. #27] to deny Plaintiff's Motion.

## II.   **LEGAL STANDARD**

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").

On default "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*,

826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

## III.   <u>ARGUMENT</u>

<u>A.  Plaintiff Objects to the Recommendation's Conclusion that the Court Does Not Have Personal Jurisdiction Over Defendants Pursuant to Fed. R. Civ. P. 4(k)(2), the So-Called Federal Long-Arm Statute.</u>

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted).

Plaintiff's claims for Trademark Infringement and Unfair Competition under the Lanham Act arise out of Federal law.  Defendant Vinit and Defendant Ali are residents of India, Defendant Shan is a resident of China, and Defendant Azzam is a resident of Egypt. *See* FAC at ¶¶26-29. Thus, Defendants are not subject to the personal jurisdiction of any state court of general jurisdiction.  The Recommendation

concedes that there is no dispute that these first two requirements of the Federal long-arm statute are satisfied. *See* Recommendation at pg. 4.

Due process requires that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotations omitted). A court has specific jurisdiction over a nonresident defendant when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017) (alteration in original).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id*. Plaintiff does not assert general jurisdiction. The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. This

requires the relationship to "arise out of contacts that the 'defendant *himself*' creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284-85 (Citing *Burger King Corp.*).

To analyze specific jurisdiction, the Ninth Circuit has articulated a three-part test to evaluate the sufficiency of a defendant's minimum contacts with the forum:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotations omitted).

In *Holland America Line v. Wärtsilä North Amer.*, the Ninth Circuit concluded that the "due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] … and the forum state, we consider contacts with the nation as a whole." *Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007). Accordingly, Plaintiff will address the three-part test of *Axiom Foods, Inc.* with respect to the US as the forum.

1.  **The Defendants Purposefully Direct their Activities Toward the US.**

A purposeful direction analysis is appropriate because a claim for trademark infringement sounds in tort.  *See Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1144 (N.D. Cal. 2007) ("A claim for copyright infringement sounds in tort, and therefore a purposeful direction analysis is appropriate.").  The purposeful direction analysis has been equated with the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984).  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018).   "Under the *Calder* effects test, purposeful direction exists when a defendant allegedly: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state*." Id.* at 604 n.3 (citation and internal quotation marks omitted).

*a.  Intentional Act*

 "An intentional act is one 'denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended.'" *Morrill v. Scott Financial Corporation,* 873 F.3d 1136, 1142 (9th Cir. 2017) (some alterations in *Morrill*) (quoting *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673-74 (9th Cir. 2012)).

Defendants intentionally utilize numerous US companies such as operating their websites and apps via the US (California) nameserver company Cloudflare, Inc. and US (California) Google Play store, and advertising through US social media

platforms Facebook and Twitter (both in California) and using US (California) email provider Google's Gmail service. *See* FAC at ¶¶7-8, 10. Specifically, Defendant Vinit used the US (Washington) web host provider Amazon Web Services, US (California) nameserver Cloudflare and US (California) payment provider Visa to pay for hosting and nameserver services. *Id*. at ¶17. Because Defendant Vinit used a US web host provider, his website and the torrent files he has installed on the website were physically located in the US (on the servers of Amazon Web Services).

Defendant Shan uses the US (California) nameserver Cloudflare, US (California) domain registrar Dynadot, LLC and the US payment provider Visa. *Id.* at ¶18.

Defendants Azzam and Ali both promote and distribute their infringing software applications from the Google Play store run by the US (California) company Google. *Id.* at ¶19. Defendant Azzam uses the US (Arizona) domain registrar Namecheap for his personal website. *Id.* at ¶20. Thus, because Defendants intentionally placed the infringing marks on websites or app stores hosted by US companies, Defendants intentionally utilized the infringing marks in the US via Google, Cloudflare, Namecheap, and Amazon Web Services.

The Recommendation did not discuss whether Defendants had committed intentional acts.

*b.  Expressly Aimed at the US*

The two factors that Courts have considered when determining whether an action is expressly aimed at the forum are: (1) whether the relationship arises out of contacts that the defendant himself creates with the forum State; (2) whether defendant contacts with the forum State rather than with persons who reside there. *See Morrill,* 873 F.3d at 1143 (quoting *Walden*, 134 S. Ct. 1115, 1122 (2014)).

Defendants promote overwhelmingly if not exclusively motion pictures produced by US companies on their interactive websites.  *See* FAC at ¶9 (screenshot shows Defendant Shan's website YTS.AE promoting torrent files for US motion pictures *To Sir with Love* and *The Bridge Part 2*), Decl. of Counsel [Doc. #25-2] at ¶7 (screenshot shows Defendant Shan's website YST.LT promoting torrent files for US motion pictures *SCOOB!*, *Lady Driver*, *The Boy II* and *Trolls*).  *See* Second Decl. of Counsel at ¶¶2-8.   The Recommendation did not even address Plaintiff's uncontroverted evidence of Defendants' promotion of overwhelmingly if not exclusively US motion pictures in concluding that Defendants do not expressly aim their infringing activities at the US.

Furthermore, Defendants took advantage of provisions of US law on their websites and apps – namely the safe harbor protections of the Digital Millennium Copyright Act ("DMCA").  *See* FAC at ¶9, Second Decl. of Counsel at ¶10.  Briefly, the DMCA provides a safe harbor for website operators from liability for copyright

infringement if they comply with certain provisions. *See* 17 U.S.C. § 512(c). Defendants' adoption of a DMCA Policy to try to avoid liability for their actions in the US for Copyright Infringement shows that they expressly aimed their conduct at the US.  Moreover, although the purposeful direction analysis is more appropriate because a claim for trademark infringement sounds in tort, Defendants' adoption of a DMCA Policy clearly shows they purposely availed themselves of the benefit of US law, namely the DMCA safe harbor.  The Recommendation did not even address Plaintiff's uncontroverted evidence of Defendants' purposeful availment of the benefits of the DMCA safe harbor.

Defendants agreed to the terms of services and jurisdiction of laws of the US in connection with their infringing activities. *See* FAC at ¶¶8, 17-20. When Defendants Vinit and Shan registered for service with Cloudflare, they agreed to jurisdiction and laws of California. *See* Decl. of Counsel [Doc. #25-2] at ¶21.  When Defendant Azzam agreed to register his domain with Namecheap, he agreed to be bound by the jurisdiction and laws of Arizona. *See Id*. at ¶22. When Defendant Vinit agreed to the terms of service of Amazon Web Services for hosting his website YTS.MS, he agreed to the jurisdiction and laws of the state of Washington. *See Id*. at ¶23. When Defendant Shan agreed to the terms of service for Dynadot, he agreed to the jurisdiction and laws of California. *See Id*. at ¶24.  Finally, when Defendants

17

Azzam and Ali agreed to the terms of service for the Google Play store, they agreed to be bound by the jurisdiction and laws of California. *See Id*. at ¶25.

Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound. *See Holland Am. Line Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted). Although these agreements provided for Courts in Arizona, Washington and California, the focus of the Federal long-arm statute test is the US as the forum. Moreover, these contacts are not the type of continuous contacts such as a place of incorporation and principal place of business that would constitute general jurisdiction with one of these states, thereby ruling out the applicability of the Federal long-arm statute.

Nonetheless, the Recommendation concluded that "Defendants' agreements with third parties about choice of law, jurisdiction, or venue are unrelated to personal jurisdiction…" Recommendation at pg. 11. The Recommendation cites the California Central District decision of *Lang Van, Inc. v. VNG Corp*, 2019 WL 8107873 (C.D. Cal. 2019) in support for this proposition. In *Lang Van*, the Plaintiff, a producer and distributor of Vietnamese music, filed a lawsuit against Defendant, a Vietnamese company operating a Vietnamese website Zing.vn, for copyright infringement for distributing Plaintiff's copyright protected songs on the Vietnamese website without a license. *Lang Van*, Doc. #212 at pg. 1. The California Central

District rejected Plaintiff's argument that Defendant's app development agreements with Apple and Google showed that Defendant expressly aimed its conduct at California. Doc #212 at pg. 6. However, this decision turned on the forum conducts (development agreements) not being related to the infringing conduct (the website). *Id*. ("the plaintiff fails to link the defendant's forum contacts with the infringing activity…") In contrast, in the present case the infringing content is overwhelmingly US motion pictures (not Indian, Egyptian or Chinese) and the forum contacts (website hosting and domain registration) are linked to the infringing activity. *See* Second Decl. of Counsel at ¶¶2-8. That is, in the present case Defendants' hosting of the websites and apps on the US resources is directly tied to the trademark infringements. Accordingly, Defendants' agreements to be subject to jurisdiction in the US is highly relevant to the express aim inquiry. Finally, it should be noted that the decision in *Lang Van* is not final because Plaintiff has appealed this decision to the Ninth Circuit. *Lang Van* at Doc. #215 (notice of appeal). The Ninth Circuit previously vacated and remanded this Court's decision to dismiss for lack of personal jurisdiction earlier on October 11, 2016. *Lang Van* at Doc. #64 (unpublished decision of the Ninth Circuit vacating and remanding).

Other cases cited in the Recommendation in support of its conclusion have facts similar to *Lang Van* and are inapposite. In *Hungerstation LLC v. Fast Choice LLC*, all parties (Plaintiffs and Defendants) were Saudi Arabian companies, and the

alleged subject matter of issue were apps for delivery services in Saudi Arabia and Bahrain. *See Hungerstation LLC v. Fact Choice LLC*, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020). In *DFSB Kollective Co. v. Bourne*, the Plaintiffs, Korean companies with their principal places of business in Korea, filed a lawsuit against an individual residing in Australia asserting copyright infringement of their copyright protected Korean music recordings. *See DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 875 (N.D. Cal. 2012). In *Bibyan v. Marjan*, a Plaintiff residing in the United States filed a lawsuit against an Iranian Defendant for broadcasting content oriented towards the Iranian market in violation of Plaintiff's copyright. *See Bibiyan v. Marjan Television Network, Ltd.*, No. CV181866DMGMRWX, 2019 WL 422664, at *4 (C.D. Cal. Feb. 4, 2019). In all of these cases, the infringing material distributed by Defendants was oriented at a non-US market (Iran for *Bibyan*, Korea for *Bourne* and Saudia Arabia for *Hungerstation*). In comparison, in the present case Plaintiff has provided uncontroverted evidence that Defendants use Plaintiff's registered trademark in connection with the massive piracy of overwhelmingly US motion pictures. *See* FAC at ¶9, Second Decl. of Counsel at ¶¶2-8.

The Recommendation also cites *Bodyguard Prods., Inc. v. Musante*, 2020 WL 403720, at *2 (D. Haw. Jan. 24, 2020) ("*Musante*") in support of the position that a defendant's use of US based companies does not show that the defendant's tortious acts were directed at the United States. *See* Recommendation at pg. 10. However,

the decision in *Musante* was made in response to a motion for early discovery to serve letters of request on a Dutch host provider to obtain identification information of Doe Defendants. *Musante* at *2.  That is, the website at issue was hosted in the Netherlands.  *Id.*

Moreover, although the Court in *Musante* found no "factual allegations so explaining" the prevalence of activity targeted at the US (*Id.* at *18), the Court cited *Goes Int'l, AB v. Dodur Ltd.* as a case where Rule 4(k)(2) jurisdiction was proper over "Chinese defendants [who] 'allegedly copied Goes's game and distributed infringing games to U.S. players, resulting in roughly 50,000 undisputed downloads' and where the 'defendants' actions are geared toward distribution of its allegedly infringing products to U.S. consumers via a U.S. commercial platform,' the Apple App Store." *Musante* 2020 WL 403720, at *18-19 (citing *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2015 WL 5043296, at *11 (N.D. Cal. Aug. 26, 2015)). In the present case, Plaintiff provides precisely the factual allegations the *Musante* Court sought in order to support Rule 4(k)(2) jurisdiction.  Indeed, Defendant Vinit's website YTS.MS clearly displays Plaintiff's protected mark. *See* FAC ¶45. YTS.MS received visits from numerous individuals (in the thousands) in the United States and particularly Hawaii. *See Id.* at ¶5, Second Decl. of Counsel at ¶12. Defendant Shan's websites YST.LT and YTS.AE clearly displays Plaintiff's protected mark. *See Id.* at ¶¶46-47. YST.LT and YTS.AE received visits from numerous individuals

(in the thousands) in the United States and particularly Hawaii. *See Id*. at ¶5, Second Decl. of Counsel at ¶¶14-15. Defendant Azzam distributes his app with the infringing mark on the US commercial platform Google play store, as well as US websites APKCombo.com and SameAPK.com. *See Id*. at ¶¶19, 40, Second Decl. of Counsel at ¶¶5-8. Defendant Ali also distributes his app with the infringing mark on the US commercial platform Google play store, as well as US websites ActiveApk.com. *See Id*. at ¶¶19, 41, Second Decl. of Counsel at ¶9. Thus, unlike *Musante*, the present Plaintiff offers the factual allegations required to support Rule 4(k)(2) jurisdiction.

In *Hunter Killer Productions, Inc. et al. v. Quazi Zarlish, et al.*, this Court applied the Federal long-arm statue to similar facts and concluded that personal jurisdiction was appropriate. *See Hunter Killer Productions, Inc. et al. v. Quazi Zarlish, et al.*, 1:19-cv-00168-LEK-KJM, Doc. #53 (D. Haw. 2020). Particularly, in *Hunter Killer* the Court agreed with Plaintiffs' assertion that the Defendant's agreement to jurisdiction in Arizona and California for the registration of his domain and use of the Cloudflare nameserver service supported personal jurisdiction.

> Although Plaintiffs' claims in this case do not arise from [Defendant] Nhat's agreements with Namesilo and CloudFlare, Nhat's willingness to be bound by federal, Arizona and California laws supports Plaintiffs' position that Nhat established a relationship with the forum, *i.e.* the United States.

*Id.* at pg. 12. Plaintiff respectfully urges the Court to adopt the same reasoning.

As alleged in the FAC, Defendants Vinit and Shan purposely direct their electronic activity into the US to target and attract a substantial number of users in the US based upon personal information, such as web browsing history. *See* FAC at ¶12. Defendants Vinit and Shan collect log files, including Internet Protocol ("IP") address, Internet Service Provider ("ISP"), and browser type of each user who visits their websites, and utilize cookies and web beacons to store information of users. *Id*. at ¶13. Defendants Vinit and Shan then use these cookies, log files, and/or web beacons to tailor advertisements expressly aimed at US users and gain financial benefits from such advertisements. *See Id*. at ¶¶14-15. Particularly, users in Hawaii receive advertisements based on their location and websites previously visited. *Id*. Indeed, the US is the third highest country from which traffic to Defendant Vinit's website YTS.MS and Defendant He Shan's website YST.LT originate, and the US is the highest country from which traffic to Defendant Shan's website YTS.AE originates. *See* Second Decl. of Counsel at ¶¶12, 14-15. On just August 20, 2020 over 12,000 visits to the website YTS.MS came from the US. Id. at ¶12. On just September 20, 2020, over 4,000 visits to the website YST.LT and over 9,300 visits to the website YTS.AE came from the US. Id at ¶¶14-15.

Defendants Azzam and Ali purposefully direct their electronic activity into the US through the Google Play store, financially benefiting from advertisements

aimed at US users and the US consumer base. *See* FAC ¶14, Decl. of Counsel [Doc. #25-2] at ¶16.

Nonetheless, the Recommendation concluded that allegations regarding Defendants' collection of information is insufficient to show that Defendants engage in conduct directly targeting the United States. Recommendation at pg. 11. The Recommendation cites the Ninth Circuit decision of *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Circ. 2020) to support the proposition that geolocated advertisements do not constitute express aiming. However, in *Wanat* the Defendant operated a website hosted on a server in the Netherlands including material uploaded by its users that was merely accessible in the US. *See Id.* at 1205 (adult content stored on a server in the Netherlands and was primarily uploaded by its users). In comparison, in the present case all Defendants designed their websites and apps to include Plaintiff's trademark themselves, uploaded or linked to the torrent files for downloading US motion pictures without a license themselves, and all of the Defendants except Defendant Shan host their websites or apps on servers in the US. *See* FAC at ¶¶17, 20. Accordingly, Plaintiff respectfully submits that *Wanat* does not apply to the facts of the present case.

### *c. Defendants Knew they were Causing Harm Likely to be Suffered in the US.*

Defendants *knew* they were causing harm in the US when operating their infringing websites and/or apps. As stated above, Defendants registered and hosted

websites and apps in the US by US companies. Defendants Vinit and Shan's websites promote movies produced by US companies, with a download link for users to reproduce each movie in violation of US copyright law, all under the infringed YTS mark. *See* FAC at ¶¶9, 11.

Thus, Defendants knew they were causing harm not only to the US companies that produced these movies, but also Plaintiff's trademark. Furthermore, Plaintiff's Counsel communicated directly with Defendants and informed them of the harm they were causing in the US. *See* Decl. of Counsel [Doc. #13-2] at ¶¶2-13.

**2. Plaintiff's Claims Arise out of or Relates to the Defendants' Forum-Related Activities.**

Plaintiff's claims arise from Defendants' websites or apps registered with US companies (Namecheap, Cloudflare, Dynadot), promoted via US social media platforms (Twitter and Facebook), hosted via the US companies (Cloudflare and Amazon Web Services), promoted on US app store Google Play, and paid from a US company (Visa) account. *See* FAC at ¶¶7-10, 16-20, Decl. of Counsel at ¶¶3, 9, 11, 14.

**3. The Exercise of Jurisdiction Comports with Fair Play and Substantial Justice.**

It is not Plaintiff's burden to address this prong. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). However, Plaintiff

respectfully submits that since Defendants have already consented to be haled into US courts in California, Washington, and Arizona, there is no further burden for Defendants to be haled into a Court in Hawaii.

B.  Plaintiff Objects to the Recommendation's Conclusion that the Court should *sua sponte* dismiss this action.

Plaintiff pleaded personal jurisdiction under the Federal long-arm statute in the alternative in the FAC. *See* FAC at ¶6.  Accordingly, Plaintiff should be given an opportunity to make a motion to transfer venue "in the interest of justice… to any other district or division where it might have been brought or to any district or division to which all parties have consented" as provided by 28 U.S.C. § 1404(a) should the Court find that personal jurisdiction is not proper rather than dismissing this case *sua sponte* as in the Recommendation.  When Defendants Vinit and Shan registered for service with Cloudflare, they agreed to jurisdiction and laws of California. *See* Decl. of Counsel [Doc. #25-2] at ¶21.  When Defendant Shan agreed to the terms of service for Dynadot, he agreed to the jurisdiction and laws of California. *See Id*. at ¶24.  Finally, when Defendants Azzam and Ali agreed to the terms of service for the Google Play store, they agreed to be bound by the jurisdiction and laws of California. *See Id*. at ¶25. Accordingly, Plaintiff respectfully asserts that the Northern District of California is a district where this action might have been brought or to which all parties have consented that would satisfy personal

jurisdiction requirements. Therefore, should this Court decide that jurisdiction is not appropriate, the Plaintiff should be given an opportunity to make the motion for change of venue.

## IV.   **CONCLUSION**

As discussed above, Defendants intentionally and expressly aimed their conduct at the US and knew their conduct would cause damage in the US. Accordingly, jurisdiction is appropriate per the Federal long-arm statute.   The Plaintiff respectfully requests that the Court grant Plaintiff's objection, reject the Magistrate Judge's Recommendation and (1) grant Plaintiff's Motion for Default Judgment, or (2) remand back to the Magistrate Judge to consider the Motion for Default Judgment.

DATED: Kailua-Kona, Hawaii, October 8, 2020.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff