IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| 42 VENTURES, LLC,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>PATRICK REND aka IVAN PETROVIC, PATRICK PETROV, VINIT MAV, HE SHAN, HOSAM AZZAM, FAHD ALI and DOES 1-10,<br><br>　　　　　Defendants. | Case No. 20-cv-00228-DKW-WRP<br><br>**ORDER OVERULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS** |

　　　　Plaintiff claims Defendants infringed its trademark and otherwise harmed it through unfair competition in violation of the Lanham Act. After a stipulated settlement ended suit against Patrick Rend aka Ivan Petrovic and Patrick Petrov, default was entered against Vinit Mav, He Shan, Hosam Azzam, and Fahd Ali ("Defendants"). Upon Plaintiff's motion for default judgment, the assigned magistrate judge found this Court lacked personal jurisdiction over the remaining Defendants and recommended dismissal of this action. For the reasons set forth below, the Court ADOPTS the magistrate judge's findings and recommendations, and OVERRULES Plaintiff's objections that urge the contrary. Plaintiff's motion for default judgment is DENIED, and the action is DISMISSED.

1

## **RELEVANT BACKGROUND**

The relevant and undisputed factual and procedural background of this case is set forth in the magistrate judge's Findings and Recommendations ("F&R") and will not be repeated here. *See* Dkt. No. 27 at 2. Upon a motion for default judgment, Dkt. No. 25, the F&R found the Court has subject matter jurisdiction over the action but lacks personal jurisdiction over the remaining Defendants. *Id.* at 4–13. Specifically, the F&R addressed the Court's personal jurisdiction over Defendants, all non-U.S. citizens living abroad, pursuant to Federal Rule of Civil Procedure 4(k)(2), the so-called federal long-arm statute. *Id.* Finding that a federal claim was advanced, and that Defendants were not subject to general jurisdiction in any state, the F&R focused on whether exercising personal jurisdiction over Defendants comports with due process. *Id.* The F&R found it did not because the facts did not support a conclusion that Defendants purposefully directed their activity at the United States. *Id.* at 12. Accordingly, the F&R recommended the denial of Plaintiff's motion for default judgment and the dismissal of this case against the remaining Defendants. *Id.* at 13.

On October 8, 2020, Plaintiff objected to the F&R. Dkt. No. 28. Plaintiff argues that there is sufficient evidence to conclude Defendants purposefully directed their activities at the United States and that the F&R's finding to the contrary was erroneous. Dkt. No. 28-1 at 16–25. Plaintiff further argues that

Defendants expressly consented to jurisdiction in the United States when they entered into contracts containing choice of venue clauses with United States-based web- and application-service providers and implicitly consented by invoking the protections of U.S. copyright law. *Id.* at 16–18.[1]

This order follows.

## **LEGAL STANDARD**

This Court reviews objections to the magistrate judge's findings and recommendations *de novo*. *See* 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673, (1980); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc). The F&R and, thus, Plaintiff's objections are limited to whether this Court has personal jurisdiction over Defendants and, if not, whether the Court should dismiss the action.

Plaintiff bears the burden of establishing that jurisdiction is proper. *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). To establish personal jurisdiction based on written materials, rather than an evidentiary hearing, Plaintiff "need only make a prima facie showing of jurisdictional facts to withstand dismissal." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020). However, this standard is not "toothless." *Id.*

---

[1] No response to Plaintiff's objections has been filed within the time permitted by Rule. *See* Local Rule 74.1(b).

Plaintiff must provide more than "bare allegations" to support finding personal jurisdiction over Defendants. *Id.* (citing *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)).

Plaintiff argues jurisdiction over Defendants is proper under Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm statute.[2] Dkt. No. 8 at 2–3. This rule permits jurisdiction where three requirements are met:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). The Due Process analysis under Rule 4(k)(2) is different from traditional personal jurisdiction analysis in only one respect: instead of "considering contacts between [defendants] and the forum state, [the Court] consider[s] contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

---

[2] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Hawaii's long-arm statute authorizes its courts to exercise personal jurisdiction "to the extent permitted" by the United States Constitution. *See Cowan v. First Ins. Co.*, 608 P.2d 394, 399 (Haw. 1980) (citing Haw. Rev. Stat. § 634-35); *accord In re Complaint of Damodar Bulk Carriers, Ltd.*, 903 F.2d 675, 679 (9th Cir. 1990).

"[T]o determine whether a nonresident defendant has such 'minimum contacts' with the forum to warrant the court's exercise of specific jurisdiction, the following requirements must be met:

1. the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;
2. the claim must be one which arises out of or relates to the defendant's forum-related activities; and
3. the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Wanat*, 970 F.3d at 1208 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks omitted)). "If any of the three requirements are not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). Plaintiff bears the burden of satisfying the first two prongs. *Wanat*, 970 F.3d at 1208 (citing *Axiom*, 874 F.3d at 1068).

Under the first prong, because Plaintiff's trademark infringement and unfair competition claims "sound in tort," the Court applies the "purposeful direction analysis and ask[s] whether [Defendants] ha[ve] purposefully directed activities at the United States." *Id.* (citations omitted). Where the allegedly tortious activity occurred outside the forum but had an effect in the forum, the Court applies an "effects test" based on *Calder v. Jones*, 465 U.S. 783 (1984). *See Mavrix*, 647 F.3d 1228–29 (applying effects test in copyright infringement case); *Panavision*

*Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321–22 (9th Cir. 1998) (applying test in trademark dilution case).  This test requires showing: (1) the defendant committed an intentional act; (2) the act was aimed at the forum state; and (3) the act caused harm the defendant knew was likely in the forum state.  *Wanat*, 970 F.3d at 1209 (citing *Mavrix*, 647 F.3d at 1228).

## **DISCUSSION**

The Court agrees, *see* Dkt. No. 27 at 4, there is no dispute that Plaintiff's claims arise under federal law and that Defendants are not subject to the personal jurisdiction of any state court of general jurisdiction.  *See* Dkt. No. 8 at 1–2 ("Plaintiff brings this action for infringement of a federally registered trademark . . . and for unfair competition" in violation of the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a)); *id.* at 6–7 (alleging Defendant Mav is a citizen of and resides in India, Defendant Shan is a citizen of and resides in China, Defendant Azzam resides in Egypt, and Defendant Ali resides in India).  The only issue then is whether this Court's exercise of personal jurisdiction over Defendants "comport[s] with due process."  *See Pebble Beach*, 453 F.3d at 1159.  As the F&R properly concluded, it does not.

I.   **Purposeful Direction of Activities**

   A.   **Intentional Acts**

There can be no dispute Defendants' acts as alleged were intentional.  "For purposes of jurisdiction, a defendant acts with 'an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'"  *Wanat*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374 F.3d at 806).  Here, Plaintiff alleges that Defendants operated video-streaming and/or download websites and/or applications.  Dkt. No. 8 at 9–13.[3]  Operating a website is an intentional act.  *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th Cir. 2010); *Pebble Beach*, 453 F.3d at 1156 (finding act intentional where trademark infringement claim related to website's name).  As such, the Court finds Defendants committed intentional acts.

   B.   **Where Defendants Directed Their Activity**

It is on this element that Plaintiff stumbles.  Defendants' alleged activities—posting United States-produced content to their sites and applications, contracting with United States-based web- and application-service providers, collecting user data and using user and location data to target content and advertisements, and

---

[3]In reviewing a motion for default judgment, this Court must take the well-pleaded factual allegations in the complaint as true.  *See Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir.1992).

7

employing a United States-based payment provider—are insufficient to demonstrate Defendants "purposefully directed" their activity at the United States.

### i. Framework to determine whether Defendants purposefully directed activity at the United States

Defendants operate websites and applications that are accessed worldwide. *See* Dkt. No. 28-1 at 23. The question then is "whether tortious conduct of a[n internationally] accessible website is *expressly aimed* at any, or all, of the forums in which the website can be viewed." *Marvix*, 647 F.3d at 1229 (emphasis added). Where the website is passive—*i.e.*, does not directly engage in financial transactions with those who access it—to show the website's activity was "expressly aimed" at the forum, there must be a showing of "something more," *i.e.*, "conduct directly targeting the forum." *Id.* A website with an international viewership may be said to target the forum if it "appeals to, and profits from an audience in a particular [forum]." *Id.* at 1231. Foreseeing that one's website "would attract a substantial number of viewers in the United States . . . alone does not support a finding of express aiming." *Wanat*, 970 F.3d at 1210 (citing *Walden v. Fiore*, 571 U.S. 277 (2014)).

The Ninth Circuit's clearest demonstration of this framework is in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). In *Wanat*, the defendant, who operated a video-streaming website from Poland, entered into contracts with U.S.-based companies to register certain domain names. *Id.* at 1205.

Nearly one fifth of all traffic to the defendant's website came from the United States, making it the website's largest market. *Id.* Further, the defendant's website contracted with a third-party to place advertisements on the website that targeted users based on their location. *Id.* at 1204–05.

Notwithstanding these facts, the court held there was no personal jurisdiction over the defendant because "the United States was not 'the focal point' of the website 'and the harm suffered.'" *Id.* at 1212 (citing *Walden*, 571 U.S. at 287). Central to the court's holding was the fact that defendant's website hosted content that was desired and consumed worldwide, rather than content specifically aimed at a United States audience. *Id.* at 1210. As important, much of the site's content was self-selected and uploaded by users, which said little, if anything, about the marketing outreach efforts by the defendant. *Id.* Finally, targeted advertising on the site was ubiquitous; that is, it targeted anyone anywhere in the world—not just in the United States—with location-specific content and advertisements. *Id.* at 1211.

### ii. Plaintiff has failed to show Defendants' activity was expressly aimed at the United States

Plaintiff presents several pieces of evidence to show Defendants "expressly aimed" their activity at the United States: (1) posting United States-produced content to their sites and applications; (2) contracting with United States-based web- and application-service providers and employing a United States-based

9

payment provider to carry on business with those companies; and (3) collecting user data and using user and location data to target content and advertisements. Each is addressed in turn.

Plaintiff argues that Defendants' websites and applications featuring United States-produced movies demonstrates those websites and applications were oriented to the United States market. Dkt. No. 28-1 at 16, 18–21 (distinguishing several cases cited in the F&R where the content at issue was not United States-produced). Framed appropriately, the question is whether Defendants "anticipated, desired, and achieved" a substantial United States viewer base through its choice to post or make available particular content. *See Marvix*, 647 F.3d at 1230 (finding an Ohio-based company "anticipated, desired, and achieved" a substantial California viewer base through its choice of California-focused content).

Like the content at issue in *Wanat*, the market for United States-produced movies is "global."[4] *See Wanat*, F.3d at 1210. Hollywood is exported around the world and demand for United States-produced film content is high. For example, in 2014, the New York Times reported that United States companies and their partners produced the twenty highest grossing films worldwide in each of the

---

[4]*See Big in China: The Global Market for Hollywood Movies*, World 101, https://world101.cfr.org/global-era-issues/globalization/big-china-global-market-hollywood-movies#:~:text=Today%2C%20nearly%2070%20percent%20of,toward%20the%20growing%20international%20market. (last visited Oct. 19, 2020) ("Today, nearly 70 percent of Hollywood box office revenue comes from abroad, up from just over 30 percent in 1991.").

previous five years.⁵  Moreover, there is no precise correlation between the origin of a website's movie content and the size of its various markets.  *See generally* Dkt. No. 28-1 at 23.  Accordingly, the Court cannot conclude that Defendants chose their content to specifically target the United States market.

That Defendants appear to control the content of their websites and applications—in *Wanat*, the court found significant the fact that most viewers chose their own content from the website at issue—does not change this conclusion.  The relevant inquiry is whether Defendants targeted the United States.  Whether a website operator controls the content of its website offers little guidance.  And here, because of the content's global appeal, this fact does nothing to convince the Court that Defendants targeted the United States.⁶

Plaintiff's argument that Defendants are subject to personal jurisdiction simply by virtue of their relationships with United States-based domain name registration companies, *see* Dkt. No. 8 at 5–6; Dkt. No. 28-1 at 14–15, is foreclosed by *Wanat*.  970 F.3d at 1212 (use of a United States-based service

---

⁵Michael Cieply, *Hollywood Works to Maintain Its World Dominance*, New York Times (Nov. 3, 2014), https://www.nytimes.com/2014/11/04/business/media/hollywood-works-to-maintain-its-world-dominance.html (last visited Oct. 20, 2020).

⁶Similarly, the Court finds little assistance in the lone fact that the server hosting Defendants' website may be located in the United States.  That server, for instance, may be so robust as to offer Defendants the best reach to their global market, rather than saying anything at all about Defendants' desire to target the United States.  If the server only reached the United States or was limited in some similar fashion, that could be of significance, but no such evidence of that has been presented.

company "does not show targeting of the U.S. market"). To succeed on this argument, Plaintiff must credibly allege Defendants' motive in selecting these United States-companies was a desire to target the United States market. *Wanat*, 970 F.3d at 1212. As the F&R found, Dkt. 27 at 9–10, Plaintiff has failed to do so.

Plaintiff claims this case is distinguishable from *Wanat* because, here, not only did Defendants use United States-based companies for domain name registration, they also used United States-based server companies and application stores to host and/or distribute their websites and applications. *See* Dkt. No. 28-1 at 24. These are distinctions with no difference. Amazon Web Services ("AWS"), which Plaintiff claims Defendant Mav used to host his website, Dkt. No. 8 at 5, boasts of "over a million customers in more than 190 countries."[7] Surely, it cannot be said that each of these million plus customers use AWS for the purpose of targeting the United States market any more than it can be said of Defendants alone. Likewise, Cloudflare, whose services Plaintiff claims Defendants Vinit and Shan utilize, Dkt. No. 28-1 at 15, boasts that its network spans "over 200 cities in

---

[7]*Global Infrastructure*, Amazon Web Services, https://docs.aws.amazon.com/whitepapers/latest/aws-overview/global-infrastructure.html (last visited Oct. 16, 2020); *see also* Scott Fulton III, *Amazon AWS: Complete Business Guide to the World's Largest Provider of Cloud Services*, ZD Net (Apr. 1, 2019), https://www.zdnet.com/ article/amazon-aws-everything-you-should-know-about-the-largest-cloud-provider/ (last visited Oct. 16, 2020).

more than 100 countries."[8] Defendants alleged use of the Google Play Store,[9] Visa,[10] Dynadot,[11] and Namecheap,[12] Dkt. No. 28-1 at 14–15, are no different. In short, these are all companies with global reach, and Plaintiff has failed to show they were selected by Defendants specifically to target the United States market.[13]

Likewise, Plaintiff's argument that Defendants' collection of data and targeting of content and advertisements to United States and, indeed, Hawaiian citizens shows Defendants targeted the United States, *see* Dkt. No.8 at 4–5; Dkt. No. 28-1 at 23–24, is foreclosed by *Wanat*. *See* 970 F.3d at 1211. Where such collection and targeting is common to users across the globe, it cannot be said that

---

[8]*The Cloudflare Global Anycast Network*, Cloudflare, https://www.cloudflare.com/network/ (last visited Oct. 16, 2020).
[9]*See Google Android*, No. AT.40099, European Commission Decision (July 18, 2018) at 128–48, https://ec.europa.eu/competition/antitrust/cases/dec_docs/40099/40099_9993_3.pdf (last visited Oct. 16, 2020) (the European Commission finding Google's app store dominant worldwide (excluding China) by all metrics considered).
[10]*In Every Corn of the World*: *Enabling Payments Across the Globe*, Visa, https://usa.visa.com/about-visa/our_business/global-presence.html (last visited Oct. 19, 2020) ("Visa is a global payments technology company connecting consumers, businesses, banks and governments in more than 200 countries and territories worldwide.").
[11]*Get to Know Us*, Dynadot, https://www.dynadot.com/community/about/about.html (last visited Oct. 20, 2020) (boasting the company "now serve[s] thousands of customers from 108 different countries around the world).
[12]*About Us*, Namecheap, https://www.namecheap.com/about/ (last visited Oct. 20, 2020) (boasting of having "10 million domains under management").
[13]Plaintiff's claim Defendants (without specifying which) use social media companies Twitter and Facebook to advertise their sites is equally unpersuasive. *See* Dkt. No. 8 at 4; Dkt. No. 28-1 at 15, 25. First, these types of generalized allegations about all Defendants collectively cannot be considered in the analysis of whether personal jurisdiction exists over any one Defendant. *See In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) ("each party's contacts with the forum State must be assessed individually" (citing *Calder*, 465 U.S. at 790) (internal quotation marks omitted)). Second, *again* these are companies with global reach and Plaintiff has not shown Defendants chose to advertise on them to specifically reach the United States market.

the United States market was specifically in Defendants' crosshairs. *See Wanat*, 970 F.3d at 1211; *cf. Marvix*, 647 F.3d at 1230 (finding significant that the site contracted with California advertisers to target California users where "this audience was an integral component of [the website's] business model and profitability"). In other words, in *Marvix*, plaintiff showed Californians were singled out. Here, like in *Wanat*, Plaintiff has not done so.

As Plaintiff has failed to demonstrate Defendants' activities were purposefully directed at the United States, the Court finds it lacks personal jurisdiction over them.[14]

## II.  Consent and Protection of U.S. Law

Plaintiff makes two additional arguments, which presumably counsel in favor of exercising personal jurisdiction over Defendants. First, Defendants have consented to United States jurisdiction in contracts containing choice of venue clauses with web- and application-service providers. Dkt. No. 25-2 at 7–11; Dkt. No. 28-1 at 17–18, 24–25  Second, Defendants' espouse policies intended to invoke the protections of United States copyright law. Dkt. No. 8 at 5–6; Dkt. No. 28-1 at 16–17. Neither argument is persuasive.

---

[14]Because purposeful direction is not evident, the Court does not address the balance of the "effects test," such as whether the harm to Plaintiff was foreseeable.

As to the former, Plaintiff attempts to recast an unpersuasive argument and present it as something new. That Defendants consented to jurisdiction by way of choice of venue clauses in contracts with United States-based web- and application-service providers is but an extension of Plaintiff's claim that Defendants' use of those providers is sufficient to show Defendants' expressly aimed their activity at the United States. To the extent the argument differs, the Court agrees with the F&R that "Defendants' agreements with third parties about choice of law, jurisdiction, or venue are unrelated to personal jurisdiction" in this case, where Plaintiff was not a party to those agreements, nor is the allegedly infringing conduct related to Defendants' performance under those contracts.[15] *See* Dkt. No. 27 at 11 (citing *Lang Van, Inc. v. VNG Corp.*, 2019 WL 8107873, at *4 (C.D. Cal. Nov. 21, 2019)).

Finally, Plaintiff fails to show Defendants sought to benefit from United States copyright law. Plaintiff alleges Defendants' websites state in general terms that they use content in compliance with the Digital Millennium Copyrights Act ("DMCA"). *See* Dkt. No. 8 at 3; Dkt. No. 28-1 at 16–17; Dkt. No. 28-2 at 8. But a

---

[15]On this point, Plaintiff asks this Court to follow, *Hunter Killer Productions v. Zarlish*, No. 19-CV-00168 LEK-KJM, 2020 WL 2064912 (D. Haw. Apr. 29, 2020), which found personal jurisdiction existed, *in part*, because the defendant agreed to submit to a U.S. jurisdiction when it registered its site with a United States-based company. Dkt. No. 28-1 at 22. The Court passes no judgment on the wisdom of that decision and acknowledges that case's similarities to this one. However, that case was decided before *Wanat* and so may not reflect the Circuit's current framework for analyzing whether personal jurisdiction exists in this context.

service provider only meets the qualifications for safe harbor under the DMCA if it (1) designates an agent who may be notified of copyright infringement on its website; (2) provides that agent's information on its website; and (3) provides the agent's information to the United States Copyright Office. 37 C.F.R. § 201.38. Here, Plaintiff alleges only the use of words on a website to invoke the DMCA, not actual steps taken by Defendants to secure protection under it. *Cf. UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (finding personal jurisdiction existed, in part, because the defendant had *registered* a DMCA agent with the Copyright Office).

### III.   Venue Transfer

Plaintiff requests that, if the Court finds it does not have jurisdiction over Defendants, it should transfer the case to the Northern District of California, rather than dismiss. Dkt. No. 28-1 at 26–27. The Court acknowledges that it has the discretion to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because the Court finds Plaintiff has failed to meet its burden to show Defendants purposefully directed their activity toward the United States and because any choice of venue provisions in contracts between Defendants and web- and application-service providers are irrelevant to the present

suit, the Court does not find Section 1404(a) applicable and declines to transfer this action to the Bay Area.

## CONCLUSION

Plaintiff's objections to the magistrate judge's findings and recommendations, Dkt. 28, are **OVERRULED**. The Court **ADOPTS** the F&R (Dkt. 27). Plaintiff's motion for default judgment, Dkt. No. 25, is **DENIED,** and the case against all remaining Defendants is **DISMISSED.**

IT IS SO ORDERED.

Dated: October 23, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*42 VENTURES, LLC v. PATRICK REND aka IVAN PETROVIC, PATRICK PETROV, VINIT MAV, HE SHAN, HOSAM AZZAM, FAHD ALI and DOES 1-10,* Civil No. 20-00228-DKW-WRP; **ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**