IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| 42 VENTURES, LLC, | ) CIVIL NO. 20-00228 DKW-WRP |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO GRANT |
| vs. | ) IN PART AND DENY IN PART |
| | ) PLAINTIFF'S MOTION FOR |
| VINIT MAV, ET AL., | ) DEFAULT JUDGMENT |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court is Plaintiff's Motion for Default Judgment as to

Defendants Vinit Mav, He Shan, and Hosam Azzam, filed on April 8, 2022

(Motion). See ECF No. 54. The Court found the Motion suitable for disposition

without a hearing pursuant to Local Rule 7.1(c). See ECF No. 55.

Based on the record in this action and the relevant legal authority, the

Court FINDS AND RECOMMENDS that Plaintiff's Motion be GRANTED IN

PART and DENIED IN PART.[1]

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

<u>BACKGROUND</u>

In this action, Plaintiff has alleged that Defendants infringed its trademark and engaged in unfair competition by operating interactive websites and/or software applications using names identical and/or confusingly similar to Plaintiff's registered "YTS" mark.  <u>See</u> ECF No. 43.  Plaintiff initially sought default judgment in August 2020 as to Defendants Vinit Mav, He Shan, Hosam Azzam, and Fahd Ali based on its First Amended Complaint.  <u>See</u> ECF No. 25.  This Court found that it lacked personal jurisdiction over those defendants—all of whom were foreign nationals—and therefore recommended that the District Court deny that request for default judgment and dismiss the action.  <u>See</u> ECF No. 27.

Specifically, this Court analyzed whether it had jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), which permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2); <u>see</u> <u>also</u> ECF No. 27.  This Court ultimately found that Plaintiff had not sufficiently alleged that defendants had purposefully directed their activities towards the United States.  <u>See</u> ECF No. 27.

The District Court overruled Plaintiff's objections to that recommendation, denied the motion for default judgment, and dismissed the

action, also denying Plaintiff's subsequent motion for reconsideration.  See ECF

Nos. 29, 32.  Plaintiff appealed.  See ECF No. 33.

      In a memorandum disposition, the Ninth Circuit affirmed that Plaintiff

had failed to plead facts showing either that the trademark infringement occurred

in the United States or that the defendants purposefully directed their infringement

to the United States, and thus that the district court lacked personal jurisdiction

over those defendants based on the allegations in the First Amended Complaint.

See ECF No. 40.  However, the Ninth Circuit remanded with instructions to grant

Plaintiff leave to amend to plead jurisdictional facts that might save its complaint.

See id.  Particularly relevant, the Ninth Circuit noted:

> Using servers in the United States to store and disseminate infringing
> content might qualify as in-forum use of a trademark, thus satisfying the first
> prong of the minimum contacts test by showing purposeful availment. And
> deliberately choosing servers in the United States to enable faster service to
> U.S.-based customers could indicate purposeful direction to the United
> States.

Id. at 3.  Because Plaintiff had not specifically alleged that the servers the

defendants used to host their infringing content were located in the United States,

the Ninth Circuit declined to address those jurisdictional questions on appeal.  See

id.

      Once the mandate issued, the District Court granted Plaintiff leave to

file an amended complaint consistent with the Ninth Circuit's instructions.  See

ECF No. 42.  Plaintiff filed its Second Amended Complaint on January 26, 2022 against Defendants Mav, Shan, Azzam, and Ali.  See ECF No. 43.  The Clerk entered default as to Defendants Mav, Shan, and Azzam on February 23, 2022. See ECF No. 48.  After seeking and being granted the ability to take limited discovery to aid in its attempt to serve the Second Amended Complaint on Defendant Ali, Plaintiff ultimately dismissed Defendant Ali without prejudice.  See ECF Nos. 49, 50, 51.

Plaintiff filed the present Motion, seeking default judgment as to Defendants Mav, Shan, and Azzam, on April 8, 2022.  See ECF No. 54.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(b)(1), (2).  The granting or denial of a motion for default judgment is within the discretion of the court.  See Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

Here, Plaintiff's Motion asks the Court to: enter default judgment against Defendants Mav, Shan, and Azzam; award statutory damages of $250,000

4

against Defendant Mav and $2,000,000 each against Defendants Shan and Azzam;

and enter a permanent injunction barring these Defendants from infringing

Plaintiff's trademark.  See ECF No. 54 at 1-2; ECF No. 54-1 at 29, 32.[1]

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an

affirmative obligation to determine whether it has subject matter jurisdiction over

this action and personal jurisdiction over the Defendants.  See In re Tuli, 172 F.3d

707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be

successfully attacked as void, a court should determine whether it has the power,

i.e., the jurisdiction, to enter the judgment in the first place.").

### 1. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this Lanham Act case

alleging trademark infringement pursuant to 15 U.S.C. § 1121.

### 2. Personal Jurisdiction

Plaintiff again contends that the Court has personal jurisdiction over

Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).  As noted above,

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a

defendant if "the defendant is not subject to jurisdiction in any state's courts of

---

[1] Plaintiff's Motion indicates it is seeking a total of $4,500,000 in statutory damages; the Court presumes this was a typo, as the amount of statutory damages requested from these Defendants totals $4,250,000.  See ECF No. 54 at 2.

general jurisdiction," and "exercising jurisdiction is consistent with the United

States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  Rule 4(k)(2) thus imposes

three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations

omitted).  Here, as the Court previously found, there is no dispute as to the first

two requirements because Plaintiff is asserting a federal trademark claim, and it is

not alleged that these Defendants are subject to general jurisdiction in any state

court.  The issue again, then, is whether exercising jurisdiction against Defendants,

who are non-resident foreign citizens, is consistent with due process under the

alleged facts.

"The due process analysis under Rule 4(k)(2) is nearly identical to

traditional personal jurisdiction analysis with one significant difference: rather than

considering contacts between [the defendant] and the forum state, we consider

contacts with the nation as a whole."  Holland Am. Line Inc. v. Wartsila N. Am.,

Inc., 485 F.3d 450, 462 (9th Cir. 2007).  For personal jurisdiction under Rule

4(k)(2) to comport with due process, three conditions must be met: (1) a

nonresident defendant must either purposefully direct his activities to the United

States or purposefully avail himself of the privilege of conducting activities in the United States; (2) the claim must arise out of or relate to those U.S.-related activities; and (3) exercising jurisdiction must be reasonable. See Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068, 1072 (9th Cir. 2017). For intentional torts such as trademark infringement, a plaintiff must satisfy the first condition by showing either (1) that the tortious conduct occurred in the United States; or (2) that out-of-forum tortious conduct was purposefully directed to the United States. See Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp., 905 F.3d 597, 604-06 (9th Cir. 2018).

### a. Purposeful Availment or Purposeful Direction

The Court finds Plaintiff has alleged facts sufficient to show that the alleged tortious actions occurred in the United States, and thus that the first prong is met. In doing so, the Court finds persuasive Chief Judge Seabright's recent order in HB Productions, Inc. v. Faizan, 2022 WL 1523604 (D. Haw. May 13, 2022). In HB Productions, the district court analyzed whether, when a defendant uses the Internet to commit infringement (in that case, copyright infringement), the tortious activity occurs where the defendant is "physically typing on the keyboard" or instead occurs at "the location in which the defendant reaches into, via the instrumentality of the Internet, and that contains the computer hardware manipulated by the defendant to commit the tort." Id. at *7. Based on its analysis

of decisions from the Ninth Circuit and other circuits, <u>HB Productions</u> found the latter view more reasonable and concluded "that when a defendant uses the Internet to commit a tort confined to the digital realm, the defendant's tortious actions occur at the location of the computer (e.g., web server) that the defendant manipulates to commit the tort." <u>Id.</u> at *8-10 ("[I]n examining the novel issue at hand—where a defendant's actions 'occur' or are 'committed' when he or she uses the Internet to commit a digital tort—the court recognizes that a defendant's manipulating data in a computer by a complex process controlled from a remote location does not alter the fact that the manipulation of the data, i.e., creating conditions prohibited by tort law, occurs where the server is physically located."). In <u>HB Productions</u>, this meant the Court could exercise personal jurisdiction over a foreign-based defendant as to the plaintiff's claim for contributory copyright infringement where plaintiff alleged the defendant hosted his infringing websites on servers leased to him in the United States. <u>See id.</u> *13 ("Accordingly, Defendant's publishing and promoting of infringement-enabling torrent files, and his general facilitating of connections between direct infringers, occurred in the United States.").[2]

---

[2] By comparison, plaintiff had not sufficiently alleged defendant's *direct* infringement (e.g., ripping legitimate copies of a copyrighted movie, distributing infringing copies of that movie through a BitTorrent network, and uploading infringing copies and torrent files onto known torrent websites) occurred in the United States. <u>See id.</u> *10-13.

8

Here, Plaintiff alleges that Defendant Mav, a citizen of India, operated the website YTS.MS that infringed Plaintiff's YTS trademark.  <u>See</u> ECF No. 43 ¶¶ 6, 42, 156, 167.  Plaintiff alleges that, despite residing in India, Defendant Mav hosts his infringing website on servers at certain IP addresses in the United States. <u>Id.</u> ¶¶ 50-51.  Next, Plaintiff alleges Defendant Shan, a citizen of China, operates and/or operated a number of websites (e.g., YST.LT, YTS.TL, ytsag.me, yts.ae, ytsmovies.cc and yts-ag.com) that infringe Plaintiff's YTS mark.  <u>See id.</u> ¶¶ 17, 71, 157, 168.  Plaintiff further alleges Defendant Shan, despite residing in China, hosts these infringing websites using an IP address at servers located in the United States.  <u>See id.</u>  ¶¶ 80-83, 93.  Lastly, Plaintiff alleges that Defendant Azzam, a resident of Egypt, distributes and promotes certain software applications (or apps) (e.g., "Y Movies – YTS Movies Library" and "YTS movies") that infringed Plaintiff's YTS trademark.  <u>See id.</u> ¶¶ 26-27, 158, 169.  Plaintiff has alleged that Defendant Azzam promoted and distributed infringing apps at third-party stores and websites that are hosted on servers in the United States, and hosts his own website where he promotes his infringing app on servers in the United States.  <u>See id.</u> ¶ 103, 118, 120-23, 129.  Plaintiff further alleges that Defendant Azzam's app includes a command to a website hosted in the United States and that, upon information and belief, the back end of Defendant Azzam's infringing app is also stored on servers in the United States.  <u>See id.</u> ¶ 116.

9

Again, the threshold question under this analysis is whether the
Defendants have taken deliberate action in the United States.  See Freestream, 905
F.3d at 604-07; see also HB Productions, 2022 WL 1523604 at *6 and n.5.  Here,
the alleged tortious conduct involves allegations of infringement, which broadly
require showing the Defendants used Plaintiff's protectible mark and that this use
is likely to cause confusion.  See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.,
Inc., 897 F.3d 1008, 1022 (9th Cir. 2018); cf. 15 U.S.C. § 1127 (defining "use in
commerce" on goods when it is placed on the goods, containers, displays, labels,
etc. or documents associated with the goods and the goods are sold or transported
in commerce, and on services when it is "used or displayed in the sale or
advertising of services and the services are rendered in commerce . . .").  Based on
Plaintiff's allegations that Defendants have chosen to host their infringing websites
and apps on servers located in the United States, and these websites and apps use
or display Plaintiff's YTS mark in connection with Defendants' goods and
services, the Court finds Plaintiff has sufficiently alleged Defendants' tortious
actions occurred in the United States.  This is underscored by the allegations that
Defendants also distribute pirated copies of motion pictures with file names that
include Plaintiff's mark to individuals in the United States.  See ECF No. 43 ¶¶ 42,
71, 101; cf. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1196
(11th Cir. 2001) (finding "use in commerce" sufficient to create ownership rights

based in part on party posting software under a filename bearing the mark at issue on a site accessible to anyone who had access to the Internet).

Further, these contacts with the United States in operating the infringing websites and promoting infringing apps were not fortuitous or happenstance.  Contra Hungerstation LLC v. Fast Choice LLC, 857 Fed. App'x 349, 351 (9th Cir. 2021) (finding location of servers "fortuitous" where plaintiff alleged only that defendants remotely accessed servers containing its confidential source code and information—which happened to be located in the United States— and then copied and transferred it to their own servers; noting that "no authority supports the proposition that the act of using a third-party company's server in the United States to host illegally-obtained information, *without more*, is sufficient to convey personal jurisdiction") (emphasis added).  Here, Plaintiff does allege something more, alleging that Defendants specifically chose servers to overcome blacklist restrictions that U.S.-based search engines and servers often apply to purported piracy websites hosted on foreign servers, and to increase the service speed to users visiting these websites from the United States.  See id.  ¶¶ 51-52 (Defendant Mav), 82-83 (Defendant Shan), 103, 116, 118, 120, 133 (Defendant Azzam).  As did the court in HB Productions, this Court "finds those allegations plausible and evincing sufficient intent to satisfy the purposeful availment test." 2022 WL 1523604 at *14.

11

**b. Claims Arising Out of Forum-Related Conduct**

As to the second element of the minimum-contacts test, the Court finds Plaintiff's trademark infringement claims arise out of or relate to the in-forum activities. As discussed above, Defendants made contact with the United States when operating the infringing websites and promoting the infringing applications, all of which used Plaintiff's YTS mark—which is thus central to Plaintiff's claims for infringement.

**c. Fair Play and Substantial Justice**

Because the Court finds Plaintiff has met its burden on the first two prongs, Plaintiff argues the inquiry must end—and that it has no burden to argue why exercising jurisdiction comports with fair play and substantial justice. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (noting the plaintiff bears the burden of proving the first two prongs and, if it does, then the burden shifts to the *defendant* to set forth a "compelling case" as to why the exercise of jurisdiction would not be reasonable). Even considering these factors, though, the Court finds that on balance they favor exercising jurisdiction here. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011). In making that determination, the court weighs the following seven factors:

> (1) the extent of the defendants' purposeful injection into the [forum's] affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's [forum]; (4) the

[forum's] interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id. (citation omitted). Based on the discussion above and the allegations in the Second Amended Complaint, the Court finds the first, fourth, fifth, and sixth factors favor exercising jurisdiction over Defendants, particularly when considering the interest in efficiently remedying torts committed against a United States entity, given Plaintiff is a limited liability company organized under the laws of Hawaiʻi and with its principal place of business in Hawaiʻi. See ECF No. 43 ¶ 154. The Court also cannot find an obvious conflict between any of Defendants' countries of residence and Plaintiff's enforcement of its trademark rights based on the allegations here. While the second factor may weigh against exercising jurisdiction, and the Court cannot say with certainty whether or not viable alternative forums exist for Plaintiff to vindicate these rights, on balance, the Court still finds exercising jurisdiction would be reasonable here despite Defendants' foreign residences.

### B.    Default Judgment Factors

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate. The court should consider the following factors in deciding whether to grant a motion for default judgment:

 (1) the possibility of prejudice to the plaintiff;
 (2) the merits of plaintiff's substantive claim;
 (3) the sufficiency of the complaint;
 (4) the sum of money at stake in the action;
 (5) the possibility of a dispute concerning material facts;
 (6) whether the default was due to excusable neglect; and
 (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

See Eitel, 782 F.2d at 1471-72 (the Eitel factors).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). The allegations as to liability are deemed true, but the plaintiff must establish the relief to which it is entitled. See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

## 1. The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, absent entry of default judgment, Plaintiff would be without any other recourse for recovery. Accordingly, the first Eitel factor favors default judgment.

14

### 2. Merits of Plaintiff's Substantive Claims

For purposes of liability, the factual allegations in the complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-18.  Here, the allegations in Plaintiff's Second Amended Complaint, taken as true, establish that Plaintiff is entitled to default judgment against Defendants Mav, Shan, and Azzam.

Plaintiff brings claims for trademark infringement and for federal unfair competition.  The elements necessary to establish federal trademark infringement and federal unfair competition are identical.  See Brookfield Comm., Inc. v. West Coast Enter. Corp., 174 F.3d 1036, 1046 n. 6, 1047 n. 8 (9th Cir. 1999).  Plaintiff must show that (1) it has a valid, protectable mark, and (2) the defendants' use of the mark is likely to cause consumer confusion.  See id. at 1046-47; OTR Wheel Engineering, 897 F.3d at 1022.

For the first element, Plaintiff alleges that it registered its trademark and obtained federal trademark protection for YTS.  See ECF No. 43 ¶ 161; see also ECF No. 43-1.

For the second element, likelihood of confusion, the Ninth Circuit has adopted an eight-factor test.  See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  The eight factors are: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting its mark; (5) evidence of actual

confusion; (6) the marketing channels used; (7) the likelihood of expansion into

other markets; and (8) the degree of care purchasers are likely to use.  See id.  "[I]n

cases involving trademarks used to sell internet services over competing web sites,

the Ninth Circuit has identified the similarity of the marks, the relatedness of the

services, and the use of common marketing channels as the most important

factors."  eAcceleration Corp. v. Trend Micro, Inc., 408 F. Supp. 2d 1110, 1116

(W.D. Wash. 2006) (citing GoTo.com, Inc., 202 F.3d at 1205).  Based particularly

on the allegations that indicate Defendants have used marks identical to Plaintiff's

YTS mark, in promoting similar unlicensed goods and services, through similar

marketing channels as YTS's own licensed goods and services are promoted, the

Court finds these factors weigh in favor of a finding of a likelihood of confusion.

The Court thus finds that the merits of Plaintiff's claims against Defendants weigh

in favor of granting default judgment.

### 3.    Sufficiency of the Complaint

The allegations in the Second Amended Complaint are sufficiently

pled and supported by the documents filed with it and the Motion.  The Court finds

that the sufficiency of the complaint weighs in favor of default judgment.

### 4.    Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to

the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176-

77.  Here, Plaintiff seeks statutory damages of $250,000 against Defendant Mav

and $2 million each against Defendants Shan and Azzam for willful infringement.

Given the amount of money at stake, the Court finds that this factor does not

clearly weigh in favor of default judgment—although it also does not preclude the

Court from granting default judgment.

### 5.    Possibility of Dispute Concerning Material Facts

The well-pled factual allegations of the complaint, except those

relating to the amount of damages, will be taken as true.  See TeleVideo Sys., Inc.,

826 F.2d at 917-18.  Defendants have been given a fair opportunity to defend this

action and have not done so.  Because no dispute has been raised regarding

Plaintiff's material factual allegations, this factor favors default judgment.

### 6.    Whether Default was Due to Excusable Neglect

Defendants' default was not the result of any excusable neglect, but

rather due to its conscious and willful decision not to defend this action.  See ECF

Nos. 15, 45, 46, 54-2 (regarding Court-authorized service by email in this matter).

Defendants failed to defend this action and default was entered against them.   This

factor too favors default judgment.

### 7.    Policy Favoring Decisions on the Merits

Defendants' default renders a decision on the merits impractical, if not

impossible.  Under Rule 55, "termination of a case before hearing the merits is

allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F.

Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219

F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)

indicates that the seventh Eitel factor is not alone dispositive"). Here, Defendants

have failed to defend this action and have consequently rendered adjudication on

the merits before this Court impracticable. This factor does not preclude the Court

from entering default judgment against Defendants.

### 8.    Totality of Eitel Factors

Accordingly, the Court finds that the totality of the Eitel factors weigh

in favor of entering default judgment against Defendants Mav, Shan, and Azzam.

The Court therefore RECOMMENDS that default judgment be entered against

these Defendants.

### C.    Remedies

Although Defendants' default establishes liability, it does not

establish all relief to which Plaintiff is entitled. See Fair Hous. of Marin, 285 F.3d

at 906. Plaintiff must provide evidence to support its requested relief and that

relief "must not differ in kind from, or exceed in amount, what is demanded in the

pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiff requests injunctive relief,

permanently barring Defendants from infringing Plaintiff's YTS trademark.

Plaintiff also requests statutory damages as follows: (i) $250,000 from Defendant

Mav; (ii) $2,000,000 from Defendant Shan; and (iii) $2,000,000 from Defendant
Azzam.

## 1. Permanent Injunction

First, regarding the requested permanent injunction, "the district court
[has] the 'power to grant injunctions according to principles of equity and upon
such terms as the court may deem reasonable, to prevent the violation of any right'
of the trademark owner." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1137
(9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). To be entitled to a permanent
injunction, Plaintiff must demonstrate: (1) actual success on the merits; (2) a
likelihood of irreparable injury; (3) a balance of hardships favoring Plaintiff; and
(4) that an injunction will advance the public interest. See Winter v. Natural Res.
Def. Counsel, 555 U.S. 7, 20 (2008).

The Court finds that, as to Defendants Shan and Azzam, Plaintiff has
demonstrated it is entitled to a permanent injunction. Plaintiff notes that Defendant
Shan continues to infringe Plaintiff's mark on multiple websites. See ECF No. 54-
1 at 33 (citing ECF No. 25-2 ¶ 7). Plaintiff also notes that Defendant Azzam
continues and has expanded his infringement. See ECF No. 54-1 at 9; see also,
e.g., ECF No. 43 ¶¶ 117-26.[3]

---

[3] Elsewhere in its Motion, Plaintiff seems to indicate Defendant
Azzam *has ceased* his infringing conduct. See ECF No. 54-1 at 33-34. The Court
has relied on Plaintiff's argument earlier in its Motion that Defendant Azzam has

As to Defendants Shan and Azzam: Plaintiff has demonstrated actual success on the merits of its infringement claims.  If an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers.  Furthermore, the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants Shan and Azzam's infringing activities. Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products."  Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc., 559 F.3d 985, 993 n.5 (9th Cir. 2009). Accordingly, the Court finds that Plaintiff is entitled to a permanent injunction mirroring that requested in the Second Amended Complaint as to Defendants Shan and Azzam.  See ECF No. 43 at 52-53 (Prayer for Relief (C)).

As to Defendant Mav, however, Plaintiff notes he has taken down his infringing websites.  See ECF No. 54-1 at 33-34 (citing ECF No. 25-2 ¶¶ 4-5). Based on this fact, the Court finds that Plaintiff has not met its burden of demonstrating irreparable harm or that the balance of harms or public interest weigh in favor of granting a permanent injunction, given Plaintiff has not shown that there is a threat of continuing violations by Defendant Mav.  See MAI Sys.

---

expanded his infringing conduct, based on additional allegations added to the Second Amended Complaint.  See, e.g., ECF No. 43 ¶¶ 117-26.

Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) ("As a general

rule, a permanent injunction will be granted when liability has been established and

there is a threat of continuing violations.").  With regard to irreparable harm

specifically, Plaintiff notes that the Trademark Modernization Act recently

modified 15 U.S.C. § 1116, which now provides: "[a] plaintiff seeking any such

injunction shall be entitled to a rebuttable presumption of irreparable harm upon a

finding of a violation identified in this subsection in the case of a motion for a

permanent injunction[.]"  15 U.S.C. § 1116(a).  But the presumption is *rebuttable*.

And courts have generally found that such a presumption may be rebutted "if the

non-movant has or will soon cease the allegedly infringing activities."  Vital

Pharms. v. PhD Mktg., Inc., 2021 WL 6881866, at *5 (C.D. Cal. Mar. 12, 2021)

(citation omitted).  Based on Plaintiff's admissions that Defendant Mav has ceased

the infringing conduct, the Court finds Plaintiff has not carried its burden as to

irreparable harm for that Defendant.

> Nor has Plaintiff argued persuasively as to why it has no adequate

remedy at law for Defendant Mav's past infringement, particularly in light of the

statutory damages the Court recommends awarding below.  See Bodyguard Prods.,

Inc. v. Doe 1, 2019 WL 826447, at *2-3 (D. Haw. Feb. 21, 2019) (adopting the

determination that plaintiff was not entitled to a permanent injunction based on

lack of evidence, in a copyright infringement action, that defendant was

21

committing ongoing infringement).

The Court therefore RECOMMENDS that Plaintiff be awarded injunctive relief, but only as to Defendants Shan and Azzam.

## 2. Statutory Damages

Plaintiff seeks statutory damages for Defendants' trademark violations instead of actual damages. "Section 1117(c) allows a plaintiff to opt for statutory damages in cases involving the use of a counterfeit mark." State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005). The Court finds Plaintiff has sufficiently demonstrated Defendants' unauthorized use amounted to counterfeiting. See id. at 721; see also ECF No. 43 ¶¶ 165, 171.

In a case of "willful" use of a counterfeit mark, courts may award a plaintiff between $1,000 and $2,000,000 in statutory damages per counterfeit mark per type of good or service sold, offered for sale, or distributed, as is "just." 15 U.S.C. § 1117(c)(2). "Willful trademark infringement occurs when the defendant's actions are willfully calculated to exploit the advantage of an established mark." DC Comics v. Towle, 802 F.3d 1012, 1026 (9th Cir. 2015) (citation omitted).

Here, because Defendants have defaulted, all of Plaintiff's allegations, including allegations of willful conduct, are considered true. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) ("The district court

22

entered default and [defendant] concedes that its default occurred with respect to a complaint that pled wil[l]fulness.  Thus, all factual allegations in the complaint are deemed true, including the allegation of [defendant's] willful infringement of [plaintiff's] trademarks."); see also ECF No. 43 ¶¶ 7, 25, 28, 165, 185; ECF No. 25-2 (providing additional evidence in support of Defendants' willfulness).

"In assessing damages for willful trademark violations, courts consider the compensatory, deterrent, and punitive functions of the damages." Amazon.com, Inc. v. White, 2022 WL 1641423, at *5 (W.D. Wash. May 24, 2022).  "[C]ourts have noted that while the plaintiff in a trademark or copyright infringement case is entitled to damages that will serve as a deterrent, it is not entitled a windfall."  Adobe Systems, Inc. v. Tilley, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010).  In light of the allegations in the Second Amended Complaint that Defendants used Plaintiff's mark in connection with offering unlicensed copyrighted content, and thus have deceived customers and traded on Plaintiff's reputation and goodwill, the Court finds that a meaningful statutory damages award here is appropriate.  The Court has also considered the fact that, because Defendants have not participated in this action, Plaintiff is unable to accurately assess actual damages—and also considered the authority cited by Plaintiff where courts have awarded the maximum of statutory damages for willful use of a counterfeit mark.  See ECF No. 54-1 at 30-31.  However, particularly because

23

statutory damages should not be akin to a windfall, the Court finds that as to Defendants Shan and Azzam a lower amount of statutory damages is appropriate here—and thus recommends the District Court award Plaintiff statutory damages in the amount of $250,000 as to each of the Defendants, i.e., a total award of $750,000 in statutory damages.  Importantly, Plaintiff offers no persuasive argument as to why an award of $250,000 against Defendant Mav is sufficient to compensate it and deter infringing conduct, but it is also entitled to $2,000,000 each against Defendants Shan and Azzam.  See ECF No. 54-1 at 29-32.  Notably, when Plaintiff first sought default judgment in August 2020, it requested $250,000 in statutory damages against each defendant.  See ECF No. 25-1 at 30.  Plaintiff's renewed Motion offers no explanation for why statutory damages eight times that amount are now appropriate as to Defendants Shan and Azzam.

In light of the above, the Court RECOMMENDS that Plaintiff be awarded $250,000 in statutory damages each against Defendants Mav, Shan, and Azzam, for a total of $750,000 in statutory damages.

## CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff's Motion be GRANTED in PART and DENIED in PART as follows:

(1)    Default judgment be entered in Plaintiff's favor against Defendant Mav, Shan, and Azzam;

24

(2)    Defendants Shan and Azzam, and each of their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them be permanently enjoined and restrained from using the trademark YTS, alone or in combination with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute or identify Defendants Shan and Azzam's products or services where that designation would create a likelihood of confusion, mistake or deception with Plaintiff's YTS mark; and

(3)    Plaintiff be awarded $250,000 in statutory damages each as to Defendants Mav, Shan, and Azzam.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, JUNE 15, 2022.



_____

Wes Reber Porter
United States Magistrate Judge

**42 VENTURES, LLC v. MAV, ET AL.; CIVIL NO. 20-00228 DKW-WRP;
FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN
PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**